2001 ME 96

**Dolores STANTON et al.**

v.

**UNIVERSITY OF MAINE SYSTEM.**

Supreme Judicial Court of Maine.

Argued: May 17, 2001.
Decided: June 26, 2001.

---

David Kreisler, Esq., (orally), Mark L. Randall, Esq., Christian C. Foster, Esq., Daniel G. Lilley Law Offices, P.A., Portland, for plaintiffs.

Patricia A. Peard, Esq., (orally), Joan M. Fortin, Esq., Katherine D. Clark, Esq., Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Plaintiffs Dolores Stanton and her parents appeal from a summary judgment entered in the Superior Court (Cumberland County, *Mills, J.*) in favor of defendant University of Maine System. Plaintiffs argue that the court erred in granting defendant's motion for summary judgment on their claims of negligence and implied contract. We agree that the court erred in ordering summary judgment on the negligence claim, and we vacate as to that claim.

## I. Background

[¶ 2] The facts taken in the light most favorable to plaintiffs may be summarized as follows: Plaintiff Dolores Stanton, age 17, was a special student, i.e., one who does not have a high school diploma but takes classes at the University. She attended a pre-season soccer program at the

University of Southern Maine in Gorham, that ran from August 24, 1997, through September 1, 1997. Student athletes participating in the pre-season sports training program were allowed to stay in dormitories on the campus. Plaintiff was assigned to stay with another girl in the Upton–Hastings dorm for the duration of the one-week program, but had difficulty with the roommate and was reassigned to another room in the Robie–Andrews dorm, where twelve other students were assigned.

[¶ 3] On August 28, plaintiff went to a fraternity party. She met a young man, who told her as she was leaving the party that he had friends at the Robie–Andrews dorm and would walk back with her. When they arrived, she used her key to open the door and he walked in and rode up the elevator with her. She got off at her floor and he stayed on. She went to her room, opened the door with a key, propped the door open and went to the window. When she turned around, the young man was there. He entered the room and sexually assaulted her.

[¶ 4] Statistics prepared by the University showed that the last reported rape on the Gorham campus occurred in 1991 and that no rapes or sexual assaults were reported from 1992 to 1997. The following security measures were in place: Students living in the dorms were provided with a key to the dorm entrance and to their own rooms. Each dorm room was equipped with active telephone service to which students could connect their own phones. Both inside and outside the front entrance to Robie–Andrews were telephones that provided direct access to the University police 24–hour dispatch. When activated, the telephones tell the police dispatcher the location of the person using the phone even if the person using it is unable to speak. Each dorm had resident assistants (RAs) living in the dorms and, in 1997, there was one assigned to each of the six floors of Robie–Andrews. The RAs arrived on August 21, 1997, but plaintiff on no occasion saw or met with the RA. There were no group meetings when plaintiff arrived for pre-season training, either with the residential life staff or the soccer team in which the pre-season students received instruction on rules and regulations regarding safety within the USM residential hall facilities. There were no signs posted in the dorms informing residents of who should or should not be allowed in the dorms.

[¶ 5] In 1999, Dolores Stanton and her parents filed this action against the University of Maine System for negligence, negligent infliction of emotional distress, and breach of an implied contract.[1] After discovery, the University filed a motion for summary judgment. The court granted summary judgment in favor of the University on all three counts and plaintiffs appeal on the negligence and implied contract claims.

## II. Standard of Review

 [¶ 6] We review the Superior Court's "entry of a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924 (citation omitted). Summary judgment will be upheld if the evidence produced demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* "To survive a defendant's motion for summary judgment,

---

1. The negligence claim was brought on behalf of the daughter. The remaining claims were brought on behalf of the parents.

a plaintiff must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law." *Id.* A plaintiff must establish a *prima facie* case for each element of the cause of action. *Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842. "A judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation." *Id.* When the court rules on a motion for summary judgment, it is to consider only the portions of the record referred to, and the material facts set forth, in the statements of material facts pursuant to M.R. Civ. P. 7(d).[2] *Handy Boat Serv., Inc. v. Prof'l Servs., Inc.*, 1998 ME 134, ¶ 16, 711 A.2d 1306 (citation omitted).

## III. Negligence

■■■ [¶ 7] A *prima facie* case of negligence requires a plaintiff to establish the following elements: a duty owed, a breach of that duty, and an injury to the plaintiff that is proximately caused by a breach of that duty. *Searles v. Trs. of St. Joseph's Coll.*, 1997 ME 128, ¶¶ 5, 6, 8, 695 A.2d 1206. The University based its motion for summary judgment on the contention that the University owed no duty of care and that, even if it owed a duty, it fulfilled that duty by providing a dormitory that was reasonably safe and secure in light of the circumstances. Plaintiffs argue that the court erred in determining that the University owed no duty to plaintiff student under the existing circumstances, and we agree.

■■■ [¶ 8] Whether a plaintiff is owed a duty of care is a matter of law. *Id.* ¶ 5. We have determined that a duty founded on premises liability exists between a student and a college or other educational institution. A student attending an educational institution has the legal status of a business invitee. *Schultz v. Gould Acad.*, 332 A.2d 368, 370 (Me.1975) (citing *Isaacson v. Husson Coll.*, 297 A.2d 98, 103 (Me.1972); *Jay v. Walla Walla Coll.*, 53 Wash.2d 590, 335 P.2d 458 (1959)). The University owed plaintiff, as a business invitee, "a duty to exercise reasonable care in taking such measures as were reasonably necessary for her safety in light of all then existing circumstances." *Schultz*, 332 A.2d at 370 (finding a duty owed to a 16–year–old student at Gould Academy who was assaulted by an unidentified intruder who entered her dorm room while she was sleeping). More particularly stated, "the law of Maine is that the owner of premises owes a legal duty to his business invitees to protect them from those dangers reasonably to be foreseen." *Id.* at 371.

■■■ [¶ 9] In this case, the court found that the danger was not foreseeable. The court based its determination on our opinion in *Brewer v. Roosevelt Motor Lodge*, 295 A.2d 647 (Me.1972). It concluded that, as in *Brewer*, "the defendant in this case 'was under no obligation to anticipate the isolated, wilful and furtive movements of a burglar-rapist whose nefarious tendencies were apparently activated by the plaintiff's failure to secure her premises with the security equipment provided by the defendant.'" *Id.* at 652. In *Brewer* a female patron of the motel was sexually assaulted by a person entering her room through her open window. *Id.* at 650. We concluded that "[t]he defendant had no warning whatsoever that such an intrusion as did happen was likely to take place. The danger was not one which it was bound to

---

**2.** M.R. Civ. P. 7(d) was amended and moved to M.R. Civ. P. 56(h) effective January 1, 2001.

have foreseen or to have guarded against." *Id.* at 652.

[¶ 10] Our decision in *Brewer*, however, is distinguishable from the facts of this case. *Brewer* involved the relationship between a motel and a patron injured as the result of an illegal entry through an unlocked window. This case involves the relationship between a university and a young student injured by a companion that she admitted to the premises. That a sexual assault could occur in a dormitory room on a college campus is foreseeable and that fact is evidenced in part by the security measures that the University had implemented. *See Mullins v. Pine Manor Coll.*, 389 Mass. 47, 449 N.E.2d 331 (1983) (finding a duty owed to a female college student who was attacked by an intruder on a campus in the Chestnut Hill section of Brookline outside of Boston). In *Mullins,* the Massachusetts Supreme Judicial Court recognized that the concentration of young people, especially young women, on a college campus, creates a favorable opportunity for criminal behavior, that many of the students tend to be away from home for the first time and may not be fully conscious of the dangers that are present, and thus that the threat of criminal behavior is self-evident. *Id.* at 335 & n. 7. It concluded that foreseeability was not dependent upon evidence of prior criminal acts and that the precautions taken by the College to protect students against criminal activities would make little sense unless criminal activities were foreseeable. *Id.* at 337. We accept the observations made in *Mullins,* and thus, we find the University owed a duty to reasonably warn and advise students of steps they could take to improve their personal safety.

 [¶ 11] Whether the University breached its duty is a question of fact. *Searles v. Trs. of St. Joseph's Coll.*, 1997 ME 128, ¶ 6, 695 A.2d 1206. The Universi-

ty sets forth in its statement of material facts certain security measures implemented. Plaintiff in her statement in opposition asserts that the University failed to warn her of any dangers or explain the security measures implemented. This assertion is sufficient to generate a genuine issue of material fact as to the University's breach of its duty. We need not address the remaining elements, because the University did not challenge them in its motion for summary judgment. *See Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933. Therefore, because a genuine issue of material fact is present, the court erred in granting summary judgment in favor of the University on the negligence claim.

### IV. Implied Contract

 [¶ 12] The parents argue that the court erred in granting summary judgment in favor of the University on plaintiffs' implied contract claim. We disagree. Whether a contract, express or implied, exists is a question of fact. *June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46, 48 (Me.1996). An implied contract "refers to that class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words." 1 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 1:5, at 20 (4th ed.1990). The contract may be implied from conduct. *Id.* at 24.

 [¶ 13] " 'To establish a legally binding agreement the parties must have mutually assented to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties.' " *Searles v. Trs. of St. Joseph's Coll.*, 1997

ME 128, ¶ 13, 695 A.2d 1206 (quotation omitted). "For a contract to be enforceable, 'the parties thereto must have a distinct and common intention which is communicated by each party to the other.'" *Id.* (quotation omitted).

[¶ 14] Plaintiffs' complaint alleges that the parents "entered into an agreement with the University of Maine System wherein the University of Maine System agreed, for consideration, to provide room and board for their daughter Dolores Stanton, a minor, on the campus of the University of Southern Maine in Gorham, Maine" and that pursuant to that agreement the University expressly or impliedly was obligated to provide a safe and secure environment and to take all reasonable steps for the protection and safety of the minor student. No facts exist in the statements of material facts that generate a genuine issue whether an implied contract exists based on the conduct of the parties. The only material facts relating to a contract are: As a student athlete participating in a pre-season practice program, Dolores was allowed to stay in a dormitory on campus and did so; and the University used a document entitled "Resident Hall Application and Contract" for students living in the University dorms during the school year and neither the student nor her parents submitted the application in 1997. Even if these facts are sufficient to demonstrate an agreement to provide housing for consideration, they fail to show with sufficient definiteness any terms that plaintiffs allege were assented to by the parties. Thus, we find no error in the court granting summary judgment in favor of the University on the parents' implied contract claim.

The entry is:

Judgment vacated with respect to the negligence claim. Remanded for further proceedings consistent with the opinion herein. Judgment affirmed with respect to the implied contract claim.