STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
LOCATION: AUGUSTA
Docket No. CV-15-110

JARED NIGHTINGALE, individually and
as Personal Representative of the Estate of
Karen Nightingale,

        Plaintiff,

        v.

R.J. GRONDIN & SONS, et al,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)

**ORDER**

Plaintiff Jared Nightingale brought the present action against R. J. Grondin & Sons, the Maine Department of Transportation ("MDOT"), the State of Maine, and the City of Augusta following the death of Plaintiff's wife, Karen Nightingale, in a motorcycle accident on July 6, 2014 on Western Avenue in Augusta, Maine. Plaintiff contends that Ms. Nightingale's motorcycle hit a pothole located in the travel lane on Western Avenue, causing her to be thrown from her bike, and that she died several days later as a result of her injuries. The incident occurred at a time of ongoing roadwork. MDOT had contracted with R. J. Grondin & Sons ("Grondin") to perform construction work including road repairs.

Plaintiff has brought claims for wrongful death pursuant to 18-A M.R.S. § 2-804(b) and (c), survivor's claim pursuant to 18-A M.R.S. § 3-817, and Maine pothole law 23 M.R.S. § 3655. The pothole claim alleged specific conduct by the City of Augusta, and no other defendants. The City of Augusta, however, was dismissed by stipulation of the parties on February 16, 2016.

1

Defendants move for summary judgment against the remainder of Plaintiff's claims and move in limine to exclude the expert testimony of David Peshkin. Plaintiff requests to incorporate a later filed affidavit of David Peshkin, and the accompanying opposition to Defendants' motion in limine, into his opposition to Defendants' motion for summary judgment. Plaintiff contends that logistics including his counsel's travel schedule did not allow for Mr. Peshkin's affidavit to be filed with Plaintiff's opposition to the motion for summary judgment. Defendants oppose the motion to incorporate as it is not properly part of the record on summary judgment and contains new and contradictory testimony from Mr. Peshkin.

The court **grants** Plaintiff's motion to incorporate as Defendants will suffer no prejudice and it aids in a complete adjudication of Defendants' motion for summary judgment.

Additionally, for the reasons discussed below, the court **denies** Defendants' motion in limine to exclude Mr. Peshkin's testimony, **grants** Defendants' motion for summary judgment as to Plaintiff's claims against the State and MDOT, and **denies** Defendants' motion for summary judgment as to Grondin.

I. **Standard of Review**

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CitiMortgage,*

2

*Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). "When facts, though undisputed, are capable of supporting conflicting yet plausible inferences— inferences that are capable of leading a rational fact-finder to different outcomes in a litigated matter depending on which of them the fact-finder draws—then the choice between those inferences is not for the court on summary judgment." *Id.* (quotation omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (citations omitted).

To survive a defendant's motion for summary judgment, a plaintiff must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law." *Stanton v. Univ. of Maine Sys.*, 2001 ME 96, ¶ 6, 773 A.2d 1045 (quotation omitted). A plaintiff must establish a prima facie case for each element of the cause of action. *Id.* (citation omitted)." A judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation." *Id.* (citation omitted).

## II.    Discussion

Defendants argue that MDOT and the State are immune from liability pursuant to the Maine Tort Claims Act. Defendants also assert a number of arguments as to why summary judgment should be granted in favor of Grondin. Specifically, they contend that: 1) Grondin was not a possessor of the land at issue; 2) as a non-possessor it did not negligently create a dangerous condition; 3) even if Grondin was a possessor of the land, it did not breach a duty to warn Ms. Nightingale about the pothole; 4) even if Grondin was a possessor of the land, Plaintiff did not establish that Grondin breached a duty of

3

care towards Ms. Nightingale; and 5) there is insufficient evidence that Grondin's alleged negligence caused Ms. Nightingale's injury. Defendants' argument that Plaintiff failed to establish Grondin owed a duty of care towards Ms. Nightingale is interwoven with the arguments in their motion in limine to exclude Mr. Peshkin's expert opinion. The court addresses each of these arguments in turn.

## A. Whether MDOT and the State of Maine are Immune

Defendants argue that the State and MDOT are immune from liability for the reasons set forth in *Paschal v. City of Bangor*, 2000 ME 50, 747 A.2d 1194. Specifically, the State and MDOT could be liable for negligent conduct arising from their street cleaning or repairs, but cannot be liable for defects in the road that were not caused by their repairs or street cleaning. Plaintiff responds that the complaint against the State and MDOT is not only that the road was defective or lacked repair, but also that MDOT was not performing the road construction or repair with due care by its failure to inspect. Plaintiff contends that *Paschal* is not on point because the City, in that case, had simply not gotten to the area where the plaintiff hit a pothole. In the present case, one of the Defendants' own experts testified that MDOT had an independent duty to carry out a safety inspection on Wednesday afternoon, the last day of work before the 4th of July weekend, and that the failure to spot the pothole was a failure of the duty to keep the roadway safe for the traveling public.

All governmental entities are "immune from suit on any and all tort claims seeking recovery of damages" except as specifically provided by statute. See 14 M.R.S.A. § 8103(1). Plaintiff seeks to recover against the State and MDOT pursuant to the statutory exception for "negligent acts or omissions arising out of and occurring

4

during the performance of construction, street cleaning, or repair operations[.]" 14 M.R.S.A. § 8104-A(4). "Pursuant to section 8104-A(4), however, "[a] governmental entity is not liable for any defect [or] lack of repair" of a roadway. *Id.* This exception, like all statutory exceptions to governmental immunity, must be construed narrowly. *Paschal v. City of Bangor*, 2000 ME 50, ¶ 10, 747 A.2d 1194 (citation omitted).

Interpreting the exception to governmental immunity in Section 8104-A(4), *Paschal* determined that the Superior Court had erred by failing to grant summary judgment in favor of the City of Bangor because the plaintiff had "failed to produce sufficient evidence to support a finding of negligence on the part of the City in any street cleaning or repair operation proximately causing his injury." 2000 ME 50, ¶ 13, 747 A.2d 1194. Similar to the present case, *Paschal* involved an injured motorcyclist seeking damages against a governmental entity. *Id.* ¶¶ 2-3. Four days before the plaintiff's injury, a heavy rain fell washing debris into the City's streets. *Id.* The City began clearing the debris, but suspended its operations for the weekend before reaching the spot where plaintiff was injured. *Id.* ¶ 3. *Paschal* explained that summary judgment was warranted against plaintiff's claim because plaintiff's complaint only alleged the City failed to clear the debris. *Id.* ¶ 12. It was not argued, and there was no evidence, that the sand and gravel on the roadway were caused by the City's negligence during street cleaning. *Id.* "The City could be liable under section 8104-A only if, during the course of street cleaning or repair, it negligently caused the debris to accumulate in the street." *Id.*

Here, given the narrow construction the court must give to the exception, the court determines that no reasonable juror could conclude that the State or MDOT's street

repairs or construction caused the pothole that injured Ms. Nightingale. Bruce Knight, an individual who was riding with Ms. Nightingale, testified that the area where Ms. Nightingale hit the pothole was part of the old road on Western Avenue "that was there before they started the construction." (Knight Dep. 11:1-12:11.) Mr. Knight testified that he had been on that road several times before the accident, with the most recent being probably being the day before the accident. (*Id.*) Similarly, Plaintiff testified that the accident occurred "at the beginning of the construction area. I do not consider this area to be actually where construction is going on…[b]ecause it hasn't been torn up yet" and it was just regular pavement that hadn't been touched. (J. Nightingale Dep. 30:15-24; *see also* Grondin's Answers to Plaintiff's Interrogatory No. 16 (closest work to the accident site was 150 feet away); Bearce Dep. 22:19-23:17, 27:10-10 (same).)

While Plaintiff presented testimony that tree limbing took place near the scene of the accident in October of 2013, there is no evidence that the tree limbing was conducted negligently or that this proximately caused the pothole to form in July of 2014. (Pl.'s A.S.M.F. ¶¶ 77-78.) Similarly, Plaintiff's evidence that during April and May of 2014, two trenches were dug across Western Avenue near the site of the accident does not save his claim. (*See id.* at 80-82.) Plaintiff did not allege or produce evidence demonstrating that these activities were conducted negligently or that these activities caused the pothole to form. The testimony from Plaintiff's expert, David Peshkin, that it seems to him that the work itself created some of the damage does not allege negligence in the creation of the hazard, as opposed to negligence in not patching a pre-existing hazard. Accordingly, the court grants grant summary judgment in favor of MDOT and the State.

6

## B. Plaintiff's Claims Against Grondin

Grondin's motion for summary judgment begins with an argument as to the proper duty of care owed. Grondin claims the only duty it owed was as a non-possessor of land pursuant to *Alexander v. Mitchell*, 2007 ME 108, 930 A.2d 1016. As a non-possessor, Grondin could only be liable for reasonably foreseeable harms stemming from a dangerous condition that it negligently created. Grondin asserts that it did not perform any work on the site of the accident, so no reasonable juror could conclude it had created a dangerous condition.

Plaintiff responds that Grondin owed a duty of care as a possessor of the land to use reasonable care to all persons lawfully on the premises. Even if Grondin was not a possessor of the land, Plaintiff argues there are questions of fact as to whether Grondin created a dangerous condition and whether that condition was reasonably foreseeable to cause injury.

### 1. *Whether Grondin was a Possessor of the Land at Issue*

"The threshold inquiry for determining whether a person may be liable for defects in land causing injury...involves the initial determination whether the individual in question was a possessor of land at the time of the injury." *Erickson v. Brennan*, 513 A.2d 288, 288-89 (Me. 1986) (citations omitted). In making this determination, the Law Court has utilized the test set forth in the Restatement (Second) of Torts § 328E, which provides that a possessor of land is:

(a) a person who is in occupation of the land with intent to control it

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

7

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under clauses (a) and (b).

*Id.* at 289 (quoting Restatement (Second) of Torts § 328E (1965)). Stated differently, "[a] possessor of land is 'one who, by occupancy, manifests an intent to control the land.'" *Denman v. Peoples Heritage Bank*, 1998 ME 12, ¶ 4, 704 A.2d 411 (quoting *Quadrino v. Bar Harbor Banking & Trust Co.*, 508 A.2d 303, 305 (Me. 1991)). "Whether a person owes a duty of care to another is a question of law," but "[w]hether a person manifests an intention to control the land…is an issue of fact." *Id.* (citations omitted).

In *Alexander*, the Law Court refused to "shift liability to private parties…who contract to plow a municipality's roads." 2007 ME 108, ¶ 31, 930 A.2d 1016. *Alexander* explained that in a tort analysis, the duty of care "is always the same --to conform to the legal standard of reasonable conduct in light of the apparent risk[,]" but the more difficult question is "when a duty will be imposed[.]" *Id.* ¶¶ 15-16 (citations omitted). In reaching the above-mentioned conclusion, *Alexander* stated, in a footnote, that the snowplow operator did not owe a duty of care to the plaintiff as a possessor of land because the operator "did not intend to control the road and instead acted to satisfy the Town's legal obligations" to keep routes clear of snow. *Id.* ¶ 30 n. 13. Although the operator may have voluntarily entered into a contract to keep the roads clear, it did not generate a common law duty running from the operator to the plaintiff. *Id.*

On the other hand, in *Pelletier v. Fort Kent Golf Club*, the Law Court agreed there was a question of fact as to whether a golf club "possessed" train tracks because the club instituted a rule allowing players to pick up their golf balls if hit near the tracks and

8

invited golfers to use the course, which necessarily involved traversing the tracks. 662 A.2d 200, 222 (Me. 1995).

Here, there is a question of fact as to whether Grondin was a possessor of the portion of Western Avenue on which Ms. Nightingale was injured. This is because it is undisputed that Ms. Nightingale's accident occurred within the limits of Grondin's construction project and there is evidence indicating that Grondin assumed responsibility for maintaining the project limits in a safe manner for the travelling public. (Pl.'s A.S.M.F. ¶ 40 (Ms. Nightingale's accident occurred within project limits); Smith Dep. 63:13-64:16 (project manager in charge of supervising Grondin's resident and construction staff testifying that Grondin was generally responsible for maintaining the road in a safe manner for the travelling public). This assumption of responsibility creates a question of fact as to whether Grondin intended to control the land, such that it is a possessor thereof. *See also Elliott v. S.D. Warren Co.*, 134 F.3d 7-8 (1st Cir. 1998) ("Everyone realized that [construction contract] constituted relevant evidence because it contained provisions setting forth on-site responsibilities for construction and safety" when determining whether a party retained control over the construction site). Defendants' reliance on snowplow cases is not persuasive as those cases do not involve the same degree of occupation and responsibility as is alleged in the present road construction case.

2. *Whether Plaintiff's Claims Against Grondin Survive if Grondin was a Non-Possessor of Land*

"A non-possessor [of land] who negligently creates a dangerous condition on the land may be liable for reasonably foreseeable harms." *Quirion v. Geroux*, 2008 ME 41, ¶ 10, 942 A.2d 670 (quoting *Colvin v. A R Cable Servs.-Me., Inc.*, 1997 ME 163, ¶ 7, 697

9

A.2d 1289). In *Quirion*, the Law Court agreed that summary judgment was warranted against the plaintiff's claim because the evidence revealed that plaintiff's injury was caused by a strong wind removing bolts that securing an awning to a building, but there was no evidence that the defendant removed and replaced the bolts or otherwise loosened or disturbed the bolts when he removed and replaced the awnings. *Id.* ¶ 11. The defendant owed a duty to not cause an unreasonably dangerous condition through his work on the awnings, but the evidence was clear that he did not breach the duty or that any such breach of duty caused the plaintiff's injuries. *Id.*

Here, as discussed *supra* Section II(A), there is insufficient evidence to support a determination that Grondin's repairs or construction negligently caused the pothole that injured Ms. Nightingale. Accordingly, to the extent Plaintiff is unable to prove Grondin was a possessor of the land at issue, Plaintiff cannot recover against Grondin because no reasonable juror could conclude that Grondin breached the duty of care as a non-possessor of land.

### 3. *Whether Grondin, as a Possessor of Land, Breached a Duty to Warn Ms. Nightingale of the Pothole*

A landowner owes a duty of reasonable care to provide safe premises to all persons lawfully on the land, and a duty to use ordinary care to ensure the premises are safe and to guard against all reasonably foreseeable dangers, in light of the totality of the circumstances. *Coffin v. Lariat Assocs.*, 2001 ME 33, ¶ 8, 766 A.2d 1018 (citations omitted). A landowner is not obliged to guarantee absolute safety, but is required to supply a reasonably safe place, guarding against all reasonably foreseeable dangers as the circumstances indicate. *Id.* (citation omitted) Hanson, 564 A.2d at 1179. A landowner has no duty, however, to warn invitees of open and obvious dangers on the property

10

unless the possessor should anticipate the harm despite the knowledge or obviousness of the harm to the invitee. *Id.* ¶ 12 (citations omitted).

Grondin contends there is no evidence: 1) that it knew or should have known of the pothole before the accident; and 2) that the pothole Ms. Nightingale hit was open and obvious and there was no reason why Ms. Nightingale would not have been able to avoid it as she was travelling along Western Avenue.

Here, there is an issue of fact as to whether Grondin should have known about the pothole before the accident. As discussed in greater detail *infra* Section II(B)(4), there is evidence that Grondin should have seen and patched what was at least a pre-pothole on July 2, 2014 and additional evidence that Grondin should have returned to inspect the area after the heavy rain fall over the weekend. (*See* Dotsie Dep. 29:21-30:12 (heavy rainfall on Friday and Saturday prior to accident).) Furthermore, there is a question of fact as to whether the pothole was open and obvious as evidenced by the conflicting testimony from other motorcycle riders in Ms. Nightingale's group. (*See* J. Maul Dep. 12:19-13:9 (testifying that Ms. Nightingale hit a large pothole that was so big there was no way you could not see it and that she was two or three car lengths behind Ms. Nightingale when she saw the pothole); K. Maul Dep. 16:15-17:12 (testifying that she did not see the pothole until after Ms. Nightingale hit it, but that it was a large and visible pothole); Knight Dep. 15:16-16:10 (testifying that he was approximately twenty-five feet from the pothole when he saw it and that he was able to swerve around it, but it wasn't a drastic movement); J. Nightingale Dep. 27:18-19 (testifying that he did not see the pothole prior to the accident).)

11

## 4. *Whether Plaintiff Sufficiently Established that Grondin Violated a Duty of Care*

Defendants argue that Plaintiff has failed to establish a violation of the standard of care. This argument is linked with Defendants motion in limine to exclude the testimony of Plaintiff's expert witness, David Peshkin. Defendants argue that the present case requires expert testimony to establish the appropriate standard of care, but that Mr. Peshkin has not done so. They contend that Plaintiff's expert, Mr. Peshkin, works as a consultant, but has no experience with construction work and has never worked as a contractor doing road maintenance. In addition, Defendants argue that Mr. Peshkin has not opined the Defendants violated the standard of care as he, at most, opined that it would be reasonable to inspect the project over the weekend, not that the failure to do so would constitute a breach of care. Furthermore, Defendants request that Mr. Peshkin be excluded from testifying about the amount of time he believes the pothole existed before the accident because his opinion is not reliable, lacks foundation, and will not assist the jury in determining a fact in issue. This is because his opinion is based on photographs of the pothole taken after the accident, and his belief that the amount of time it takes for a pothole to form is dependent upon many of factors, some of which Mr. Peshkin did not consider or did not know. In addition, Defendants contend that Mr. Peshkin does not have any training in the examination of potholes and, to his knowledge, there is no science or study on the issue.

Plaintiff responds that Mr. Peshkin's CV establishes beyond doubt that he is an expert in the pavement and construction field. Plaintiff further argues that Defendants improperly latch onto testimony from Mr. Peshkin in which he thought he was being asked if whether was an expert regarding construction contract requirements, which he is

12

not. What Mr. Peshkin did opine was that Grondin had a duty to inspect the entire roadway in the project and that the pothole would have—at least—been in an advanced enough state of deterioration that it was a danger and should have been seen.

The Maine Rules of Evidence provide, in pertinent part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if such testimony will help the trier of fact to understand the evidence or to determine a fact in issue. M.R. Evid. 702; and

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or has personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, the facts or data need not be admissible for the opinion to be admitted. M.R. Evid. 703.

"A proponent of expert testimony must establish that (1) the testimony is relevant pursuant to M.R. Evid. 401, and (2) it will assist the trier of fact in understanding the evidence or determining a fact in issue." *Searles v. Fleetwood Homes of Pennsylvania, Inc.*, 2005 ME 94, ¶ 21, 878 A.2d 509 (citation omitted). "To meet the two-part standard for the admission of expert testimony, the testimony must also meet a threshold level of reliability." *Id.* (citation omitted). Indicia of scientific reliability may include the following:

> whether any studies tendered in support of the testimony are based on facts similar to those at issue, whether the hypothesis of the testimony has been subject to peer review, whether an expert's conclusion has been tailored to the facts of the case, whether any other experts attest to the reliability of the testimony, the nature of the expert's qualifications, and, if a causal relationship is asserted, whether there is a scientific basis for determining that such a relationship exists.

*Searles*, 2005 ME 94, ¶ 23, 878 A.2d 509 (internal citations omitted). An expert's opinion may not be based upon surmise or conjecture. *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 219 (Me. 1996) (citation omitted).

13

In addition, the court must determine whether an expert witness possesses the requisite qualifications to form an expert opinion. *Pelkey v. Canadian Pacific Ltd.*, 586 A.2d 1248, 1254 (Me. 1991). Testimony that amounts to "subjective belief or unsupported speculation" must be excluded as it cannot possess sufficient reliability. *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993). Furthermore, the court "must consider whether the matter is beyond common knowledge so that the untrained juror will not be able to determine it intelligently and whether a person with specialized knowledge can give a helpful opinion." *Pelkey v. Canadian Pacific, Ltd.*, 586 A.2d 1248, 1254 (Me. 1991) (citation omitted).

Here, the court denies Defendants' motion in limine to exclude Mr. Peshkin's testimony. First, the court concludes that the subject matter of Mr. Peshkin's testimony is permissible as the process, timing, and means by which a pothole forms is beyond common knowledge and jurors would benefit from an expert's opinion on the topic. Second, the court determines that Mr. Peshkin is qualified to opine on the topic. His CV demonstrates a long and detailed knowledge of pavement research, evaluation, and design. Additionally, while Mr. Peshkin's deposition testimony contains some confusion as to whether he is an expert in the pavement and construction field, his subsequent affidavit and a close reading of his testimony indicates that the confusion stemmed from Mr. Peshkin's concern about offering an expert opinion regarding the legal interpretation of construction contracts. (*See* Peshkin Dep. 28:4-24, 56:10-58:18, 59:22-62:6.) Furthermore, while Mr. Peshkin stated that he has not had any training in examination of potholes to determine how long they have existed, he explained that he does not believe any such science or training exists. (*Id.* at 52:2-13.) Defendants have come forward with

14

no contrary evidence indicating that such training or science exists and that Mr. Peshkin is unqualified by lack of such knowledge.

The court also determines that Mr. Peshkin's testimony raises issues of fact as to whether Grondin breached its duty of care by failing to know about and patch what were, at a minimum, the visible beginnings of a large pothole. Mr. Peshkin clearly explained that based on the smooth rounded edge of the pothole shown in pictures taken shortly after the accident, he believes it is highly unlikely that pre-pothole conditions such as cracking and the loss of pieces were not present on July 2, 2014. (Peshkin Dep. 47:3-23, 53:7-54:6 (opining based on pictures of the pothole that it was highly unlikely that there had not at least been very badly cracked portions of pavement by the pothole and that Grondin should have seen and patched the pre-pothole spot); *see also id.* at 34:7-35:17 (opining the pothole or pre-pothole would have been visible at the time of the inspection on July 2).) Furthermore, Mr. Peshkin opined that Grondin should have seen and patched the pre-pothole spot on July 2. (*Id.* at 53:7-54:6.) The court determines that this testimony is admissible and gives rise to a disputed fact even though Mr. Peshkin stated that he did not disagree with Grondin's inspector when he said that he saw nothing. (*Id.* at 36:19-37:2.) This is because Mr. Peshkin later explained that he believed the pothole or pre-pothole conditions existed on July 2, and when he stated he did not disagree with Grondin's inspector, he meant that he believed the inspector did not intend to lie, but simply missed and forgot about the portion of the road at issue. (*Id.* at 41:7-23.)

Mr. Peshkin's deposition testimony also raises issues of fact as to whether Grondin breached its duty of care by failing to inspect the road and patch the pothole after the heavy rains on July 4 and 5. (*See* Dotsie Dep. 29:21-30:12.) While Mr. Peshkin

15

testified that, "in general after a rainfall the contractor shouldn't have to go out and inspect the roads," (Peshkin Dep. 55:9-21), he explained that "given the condition of the road as at the time of the 4th of July weekend, and given the weather, it would be reasonable to assume that the condition could worsen" and therefore "if somebody had responsibility for it, that they would go out and verify that it was fine or not fine." (*Id.* at 55:22-56:9.) Furthermore, despite the fact that Mr. Peshkin's testimony is not a model of clarity and he did not clearly utilize legal terminology, when his deposition is read as a whole, and his CV is taken into account, the court is not prepared to determine that Mr. Peshkin has not offered admissible expert testimony that a reasonable contractor would have gone back to inspect the pavement after the heavy rain on July 4, and 5 given the condition of the road and the duration of the break in construction work. (*Id.* at 56:10-58:18; *see also id.* at 59:22-62:6 (reiterating the above and agreeing with the Augusta street superintendent that Grondin should have checked the road after the rains).)

> 5. *Whether Plaintiff Sufficiently Established Grondin's Alleged Negligence was the Actual Cause of Ms. Nightingale's Accident*

Defendants contend that even if Plaintiff could establish a breach of the standard of care, there is no evidence that Defendants' alleged negligence actually caused the harm alleged. This is because Mr. Peshkin's testimony regarding when the pothole came into existence is too speculative to establish causation.

Here, while Mr. Peshkin admitted that no one could know when the pothole actually formed, (Peshkin Dep. 47:24-48:5), his knowledge of pavement and potholes, review and analysis of pre and post accident photographs, knowledge of weather conditions, and general knowledge regarding heavy traffic are sufficient to support

16

Plaintiff's causes of action against Grondin. (*See* Peshkin Dep. 55:9-58:15, 59:22-62:6 (discussing factors supporting his opinion).)

### III.    Conclusion

As discussed in greater detail above, the court:

1.) Grants Plaintiff's motion to incorporate;

2.) Denies Defendants' motion in limine to exclude Mr. Peshkin's testimony;

3.) Grants Defendants' motion for summary judgment as to all claims against the State and MDOT; and

4.) Denies Defendants' motion for summary judgment as to all claims against R.J. Grondin & Sons.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to incorporate this Order by reference in the docket.

**Dated: January 6, 2017**

**M. Michaela Murphy, Justice**
**Maine Superior Court**