STATE OF MAINE                          SUPERIOR COURT
LINCOLN, SS.                            CIVIL ACTION
                                        Docket No. CV-2016-003


WILLIAM C. ANGELL,

      Plaintiff

                          **ORDER ON PENDING MOTIONS**

V.


MARGARET H. ORRICK,

      Defendant

## INTRODUCTION AND BACKGROUND

Before the court for resolution are the following: (1) Defendant's Motion for Summary Judgment filed on April 25, 2017 and; (2) Defendant's Motion In Limine to Preclude Plaintiff's Designated Liability Expert from Testifying at Trial filed on April 24, 2017. The Plaintiff has filed oppositions to both motions. The basic facts are not disputed.

The Defendant, Margaret Orrick, is the owner of property located at 3007 Bristol Road in New Harbor, Maine. Located on Defendant's property is a tree (either an American Linden or a Red Maple) some branches of which grew over Bristol Road. On June 28, 2014 the Plaintiff, William Angell, was driving along Bristol Road in his convertible automobile when a large portion of the Defendant's tree overhanging the road broke off and crashed directly onto him, causing him personal injuries. The tree on the Defendant's property has been growing there since approximately 1920.

The Defendant has never received any reports or complaints from any source regarding the condition of the tree, and no violations or warnings have been issued

to her from any governmental entity with regard to the maintenance of her property or the tree that grew there. Central Maine Power Company performs tree trimming around its power lines in 5-year cycles and performed tree trimming in 2012 along Bristol Road where the Defendant's property is located.

The Plaintiff has designated Steven B. Nichols, a licensed arborist, as an expert. Mr. Nichols has been in the tree business virtually all his life, as were his father and older brothers. During his deposition, Mr. Nichols testified that he had driven by the tree on Bristol Road at the Defendant's property for 20 to 30 years, and that as a licensed arborist he had noticed that the tree was in poor condition and suffering from rot. He stated that there were indications of rot, "not visible rot." He testified that as he drove by the tree he frequently wondered as to when the tree would come down because he could tell: "it was just a mess. It was a really bad tree. The whole base was all rotted out."

In his deposition Mr. Nichols talked about the tree being "three-stemmed" which means that it had V-grooves" that collected water which would freeze, then unfreeze, then re-freeze, thereby causing stress on the tree. This was also a source of insect infestation. He stated: "it was just so blatantly obvious every time you went to watch out and get by this tree because at any time she's coming down, you know." Mr. Nichols acknowledged that a tree "that's rotten on the bottom will still have nice green leaves and everything on top." He stated that the poor condition of the tree and the extensive rot to the base of the tree was "obvious" to him because he was a licenses arborist. Over objection, however, Mr. Nichols also testified that the rot on the tree would be "obvious" to "[a]nybody who drove by and looked at it." As to the cause of the tree falling, Mr. Nichols opined that the base of the tree was so rotted that it could not handle the weight of the tree as it grew taller.

Early on in his deposition, it was discovered that the initial report prepared by Mr. Nichols after a brief visit to the property was erroneous because it was

based upon an assessment of a different tree. Later, after his deposition, and in a report dated April 6, 2017, Mr. Nichols stated: "[t]he condition of the tree was very poor, and this was readily apparent and visible to anyone looking at the tree. The fact that the leader was so bent over, was also cause for concern, and readily apparent to anyone who saw the tree driving by the property, such as myself." The Defendant has objected to this report and has requested that the court not consider it. The court has made reference to it here in order to place into context both the motion for summary judgment and the motion in limine with respect to any testimony by Mr. Nichols.

Mr. Nichols did not recall telling anyone of his observations of the tree in question, including the Defendant.

In a 5-count Complaint against the Defendant filed on January 14, 2016, the Plaintiff has sought damages for the injuries he suffered on June 28, 2014. Count I alleges negligence. Count II alleges a failure to inspect and maintain by the Defendant, specifically the tree that posed a dangerous condition to persons using a public road. Count III alleges a failure to warn persons of the dangerous condition of the tree overhanging the road. Count IV alleges *res ipsa loquitor*, i.e., inferred negligence by the nature of the incident itself. Finally, Count V alleges nuisance.

The court agrees with the Defendant that Counts I-III and Count V (nuisance) all sound in the tort of negligence and the crucial issue is to identify what duty, if any, the Defendant had with respect to the tree that caused the Plaintiff's injuries.

## SUMMARY JUDGMENT STANDARD

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely...of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995). Summary judgment is appropriate where there are no

3

genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the fact. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶11, 48 A.3d 774.

Summary judgment is also appropriate if, looking at the record in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, no reasonable juror could find for the non-moving party. *Id.* ¶ 14, n. 3 (quoting *Scott v. Harris*, 550 U.S. 372, 377 (2007)). This is true "even when concepts such as motive or intent are at issue…if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Dyer. v. Dep't. of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821 (quoting *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007)); *Bouchard*, 661 A.2d at 1144-45 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted"). Accordingly, a "judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation." *Stanton v. Univ. of Maine System*, 2001 ME 96, ¶ 6, 773 A.2d 1045.

## LIABILITY FOR FALLING TREES/ LIMBS ONTO PUBLIC ROADS

Initially, the Defendant argues that she did not owe any duty with respect to the "natural condition", i.e., the tree growing on her property. In support of this proposition, she relies upon *Radley v. Fish*, 2004 ME 87, 856 A.2d 1196 and *Bell v. Dawson*, 2013 ME 108, 82 A.3d 827.

4

"[A] landowner does not owe a duty to protect off-premises travelers on an adjacent roadway with respect to natural conditions on the landowner's premises." *Bell v. Dawson*, 2013 ME 108, ¶ 29, 82 A.3d 827 (citing *Radley v. Fish*, 2004 ME 87, ¶¶9-12, 856 A.2d 1196). A landowner could, however, "have a duty to those outside of his property with respect to dangerous, artificial conditions on the landowner's property." *Id.* (citing Restatement (Second) of Torts § 364 (1965)). Such a duty only arises if the landowner "realizes or should realize that the condition will involve an unreasonable risk of harm." *Id.* (quotation omitted).

The Restatement (Second) of Torts section 364 provides that "[a] possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm, if…the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it."

"[T]he determination of the scope of a defendant's duty rests not only on foreseeability, but also other policy considerations." *Bell v. Dawson*, 2013 ME 108, ¶ 31, 82 A.3d 827 (citing *Radley*, 2004 ME 87, ¶ 10, 856 A.2d 1196). In *Radley*, the Law Court declined to place a duty on the landowner, based on a foreseeable risk of harm to users of the adjacent way, to trim weeds along the end of his driveway "or run the risk of the kind of liability that the [plaintiffs] seek to impose," noting that "[t]he consequences of imposing such a legal duty on a landowner to control natural conditions on the landowner's property for the benefit of those off the property are too severe". *Radley*, 2004 ME 87, ¶ 11, 856 A.2d 1196.

In *Bell v. Dawson*, the plaintiff brought suit after getting into an accident on his skateboard when he left the defendants' driveway alleging the accident was

caused, at least in part, by dangerous topographical conditions that were negligently created or permitted to exist in the driveway. 2013 ME 108, ¶ 26, 82 A.3d 827. The allegedly dangerous conditions included a crabapple tree on the east side of their driveway. *Id.* ¶ 21. The court noted, however, that in addition to the tree, there was a utility pole that appeared to be closer to the street than the tree. *Id.* The tree's base was approximately ten feet north of the road in a town right-of-way, and the record showed that the tree's foliage extended into the defendants' property, but did not extend into the driveway or obscure the view of the base of the defendants' driveway. *Id.* One of the defendants cut off branches lower than five and a half feet from the tree, but did not otherwise trim the tree. *Id.* In addition, one of the defendants had planted a forsythia bush that was approximately fifteen feet north of the street and roughly three feet high at the time of the accident. *Id.* ¶ 13.

The Law Court explained that even if vegetation that was planted by a person or has been changed by a person could be an "artificial condition," the vegetation at issue must have posed "an unreasonable risk of harm," in the circumstances. *Id.* ¶ 31. It then noted that Maine is "a largely rural state" and that "[v]egetation, in varying stages of growth and with foliage that changes with the seasons, exists at or near the intersection of many roadways and driveways." *Id.* The court noted that "some vegetation on private property may be planted or maintained with a purpose to limit the view into private property of persons driving or walking on the roadway." *Id.* After setting out this qualification, the court determined that "on the facts of this case," it declined "to impose a duty on landowners to trim back vegetation on their premises that may be alleged to be in the vicinity of the intersection of roadways and driveways or walkways." *Id.*

Neither *Radley* nor *Bell*, however, addressed the situation here, namely, a tree or tree limb that extended over and fell onto a public road causing injury to

6

another person lawfully using that road. The *Restatement 2d of Torts*, §363 does address this situation. It provides:

> (1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.
> (2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

The Law Court has not decided whether this provision of the *Restatement 2d of Torts* is applicable in Maine. In *Radley* the Court expressly declined to opine on whether this section "may be applicable in future cases." 2004 ME 87, ¶ 11, n. 5. The Comment on Subsection (2) states:

> The rule stated in Subsection (2) is an exception which has developed as to trees near a public highway. It requires no more than reasonable care on the part of the possessor of the land to prevent an unreasonable risk of harm to those in the highway, arising from the condition of the trees. In an urban area, where traffic is relatively frequent, land is less heavily wooded, and acreage is small, reasonable care for the protection of travelers on the highway may require the possessor to inspect all trees which may be in such dangerous condition as to endanger travelers. It will at least require him to take reasonable steps to prevent harm when he is in fact aware of the dangerous condition of the tree.

Cases from other jurisdictions have considered fact patterns involving trees falling onto a roadway or adjacent property. One of the most often cited cases appears to be *Ivancic v. Olmstead*, 66 N.Y.2d 349, 488 N.E.2d 72 (1985). In that case the plaintiff was injured while in his parents' driveway, when a heavy

7

windstorm caused an overhanging limb from a tree on the defendant's adjacent property to fall. The court, citing *Restatement (Second) of Torts*, §363, held that "no liability attaches to a landowner whose tree falls outside of his premises and injures another unless there exists actual or constructive knowledge of the defective condition of the tree." With respect to the issue of constructive knowledge, the court stated: "there is no duty to consistently and constantly check all trees for nonvisible decay. Rather, the manifestation of said decay must be readily observable in order to require landowners to take reasonable steps to prevent harm." 488 N.E.2d at 74.

The court in *Ivancic* made it clear that although there may be evidence that "would have alerted an expert, upon close observation, that the tree was diseased," there must be evidence "that would put a reasonable landowner on notice of any defective condition of the tree." *Id.* Numerous courts have reached conclusions similar to *Ivancic*. *See, e.g., Meyers v. Delaney,* 529 N.W.2d 288, 290 (Iowa, 1995)(decay must be known or apparent from external observation); *Willis v. Maloof,* 361 S.E. 2d 512, 514 (Ga. App, 1987)(duty on landowner is that of a reasonable person who should reasonably have known tree was diseased and hazardous, not that of an expert trained in the inspection and care of trees); *Pesaturo v. Kinne,* 161 N.H. 550, 20 A.3d 284 (2011)(following *Ivancic v. Olmstead*); *Lewis v. Krussel,* 2 P.3d 486 (Wash. App., 2000)(following *Ivancic v. Olmstead* – alleged defect in tree must be readily observable; visible; apparent; patent). *See generally, Liability of Private Owner or Occupant of Land Abutting Highway for Injuries or Damage Resulting from Tree or Limb Falling Onto Highway,* 94 A.L.R. 3d 1160.

From these authorities it appears that the prevailing view is:

> . . . when a tree is decayed or defective, a landowner who knows or should know that his tree is decayed or defective has a duty

8

to maintain the tree to eliminate this dangerous condition. . . . [A] landowner who knows or should know that his tree is decayed or defective and fails to maintain the tree reasonably is liable for injuries proximately caused by the tree, even when the harm occurs outside of his property lines.

*Pesaturo v. Kinne*, 161 N.H. 500, ¶ 7, 20 A.3d 284.

In this case the Plaintiff has not generated a genuine issue of material fact that the Defendant had actual knowledge of any defective or decaying condition of the tree that failed on June 28, 2014. The issue, then, is whether the Plaintiff has generated a genuine issue of material fact that the Defendant had constructive knowledge of the defective condition of the tree.

The only evidence on this point is the testimony of Mr. Nichols, the Plaintiff's designated expert arborist. Although Mr. Nichols testified that it was "obvious" to him that the tree was in poor condition and heavily rotted at its base, he also testified that he knew this from driving past the tree for many years (20 to 30 years) and based on his expertise as an arborist. Significantly, Mr. Nichols never told the Defendant (or anyone else that he could recall) about the defective and dangerous condition of the tree or that he believed its collapse was virtually imminent. Moreover, he initially testified that the rot was "not visible," but later stated that the "rot" in the tree would have been "obvious" to "[a]nybody who drove by and looked at it."

In the court's view, Mr. Nichols cannot impute his state of mind to others, and he cannot testify to what would be "obvious" to "anybody" who does not have his level of training, experience and expertise in the inspection and maintenance of trees. The question is not what would be obvious or apparent to an expert, but what would be readily observable to a reasonable landowner. Here there is no evidence as to what would be reasonably observable to a reasonable ordinary person who looked at the tree. There was no evidence that there were dead

9

branches on the tree or that branches had fallen from the tree in the past. There were no concerns or complaints expressed to the Defendant from any source – neighbors, municipal officials or CMP tree-trimming workers. Mr. Nichols acknowledged that the leaves on the tree looked green and "nice" up top, even though there was rot at the base. The photograph of the tree, identified as Nichols Deposition Exhibit 25, does not support the conclusion that any defective condition of the tree would have been readily apparent or observable to a layperson.

The court concludes that the Plaintiff has failed to generate a genuine issue of material fact that the Defendant had actual or constructive knowledge of any defective or hazardous condition of the tree as of June 28, 2014. The Defendant's Motion For Summary Judgment will be granted as to all counts.[1] In view of the court's ruling on the motion for summary judgment, it is not necessary to resolve the Defendant's motion in limine regarding the permitted scope of any testimony that Mr. Nichols might give at trial.

## CONCLUSION

The entry is:

Defendant's Motion for Summary Judgment is GRANTED.

The Clerk shall incorporate this Order into the docket of this case by notation reference in accordance with M.R.Civ.P. 79(a).

Dated: August 23 , 2017.

William R. Stokes
Justice, Superior Court

---

[1] Even if the court were not inclined to grant summary judgment as to all counts of the Complaint, it would grant it in any event as to Count IV alleging *res ipsa loquitor* for the reason that the doctrine does not apply in this situation of falling trees or tree limbs.

```
WILLIAM ANGELL  - PLAINTIFF                    SUPERIOR COURT
48 CHESTNUT STREET APT 2                       LINCOLN, ss.
ANDOVER MA 01810-3625                          Docket No  WISSC-CV-2016-00003
Attorney for: WILLIAM ANGELL
NEAL WEINSTEIN  - RETAINED
LAW OFFICES NEAL WEINSTEIN                      DOCKET RECORD
32 SACO AVENUE
PO BOX 660
OLD ORCHARD BEACH ME 04064-0660


vs
MARGARET ORRICK  - DEFENDANT
48 MYSTIC VALLEY PARKWAY
ARLINGTON MA 02474
Attorney for: MARGARET ORRICK
J WILLIAM DRUARY JR - RETAINED
MARDEN DUBORD BERNIER & STEVENS PA LLP
44 ELM STREET
PO BOX 708
WATERVILLE ME 04901
```