

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-15-438

STEVEN KELSEY HAZEN,            )
                                )
        Plaintiff,              )
                                )
                                )   **ORDER ON ALL PENDING**
                                )   **MOTIONS**
                                )
    v.                          )
                                )
FRANKLIN GRAHAM HAZEN,          )
MARY ELIZABETH OSGOOD,          )
RODERIC OSGOOD,                 )
ROBERT E. MacDONALD, trustee for the )
PRUDENCE ELEANOR HAZEN TRUST,   )
                                )
        Defendants,             )
    and,                        )
                                )
RODERIC OSGOOD, trustee for the )
THE FRANKLIN GRAHAM HAZEN       )
REVOCABLE TRUST, MICHAEL        )
FRANKLIN HAZEN,                 )
                                )
        Party-in-Interest.      )

REC'D CUMB CLERKS OF
JUN 15 '17 PM1:47

Presently before the Court are the following Motions: (1) Plaintiff Steven Kelsey Hazen's Motion for Leave to file a Second Amended Complaint; (2) Plaintiff's Partial Motion for Summary Judgment as to Counts VI and VII of Plaintiff's Complaint; and (3) Defendants Franklin Graham Hazen, et al.'s Motion for Summary Judgment as to all Counts of Plaintiff's Complaint. Each party filed Statements of Material Fact, Oppositions, and Reply Statements of Material Fact, in support of their Cross Motions for Summary Judgment, collectively laid out in over one-hundred-and-fifty pages. In their Statements of Material Facts, the parties rely heavily upon the extensive deposition testimony taken in this case, which, taken together, number over eight-hundred-and-fifty pages. Also filed are the pertinent estate planning documents, emails,

Plaintiff–Glenn Israel, Esq.
Defendant Franklin G Hazen–Bruce Merrill, Esq.
Defendants Mary Osgood, Michael F Hazen, Roderic Osgood
 –Alfred Frawley, Esq. and Thimi Mina, Esq.
Defendant Robert MacDonald–Richard O'Brien, Esq.

other correspondence, and the arguments themselves, which, in combination with the previous documents, constitute well over a thousand pages of related material that the Court has considered in deciding the pending Motions. After carefully considering the parties' voluminous filings, the Court denies Plaintiff's Motion for Leave to Amend the Complaint, and grants in part and denies in part the parties' Cross Motions For Summary Judgment for the reasons stated below.

## I.    BACKGROUND

Franklin and Prudence Hazen were married for 65 years. (Defs.' Mot. Summ. J. S.M.F. ¶ 1.) During their lifetime, they acquired the following relevant real property assets: a seasonal camp on Thomas Pond (the "Camp"); a house on route 302 in Casco, Maine (the "Kelsey House"); a partially completed seasonal camp on Thomas Pond (the "Deck"); and undeveloped land adjacent to the Kelsey House (the "Tree Farm"). (Pl.'s Mot. Partial Summ. J. S.M.F. ¶ 13.) They also had four children, Steven, Michael, Mary, and Susan. (*Id.* ¶ 2.) At a suggestion of one of their children, Franklin and Prudence retained an Attorney, Jacqueline Rider, to construct and implement their own respective trusts. (Mary Hazen Dep. 65.)

Franklin requested that Steven, with appropriate input from Mary and Michael, put together a draft of recommendations for his parents' estate plan. (Pl.'s Mot. Partial Summ. J. S.M.F. ¶ 12.) Steven contacted Attorney Rider and received information pertaining to his parents' real property. (*Id.* ¶ 25.) He used that information to conduct a detailed analysis, which is captured within a report that was eventually entitled, "Report of Recommendations Regarding the Estates of Franklin G. and Prudence E.K. Hazen." (*Id.*) Franklin and Prudence Hazen signed the front page of the report, and Franklin wrote "Prudence and I discussed this today [and] we both agree with it." (Report of Recommendations, Pl.'s Compl. Ex. C.)

2

With the assistance of Attorney Rider, Prudence and Franklin executed their respective Trusts, known as the Prudence Eleanor Hazen Revocable Trust Agreement ("Prudence Trust") and the Franklin Graham Hazen Revocable Trust Agreement ("Franklin Trust"). (Pl.'s Mot. Partial Summ. J. S.M.F. ¶ 33.) The Prudence Trust was funded with the Camp, the Deck, and the Tree Farm, while the Franklin Trust was funded with the Kelsey House and $ 275,000 in cash and securities. (*Id.* ¶ 34.) Attorney Rider served as the Trustee for the Prudence Trust. (*Id.* ¶ 51.)

Regrettably, Prudence passed away on October 7, 2009. (*Id.* ¶ 50.) Both parties dispute the ensuing events, but suffice it to say that after this time Plaintiff and Defendants viewpoints on how to utilize the real property assets in the Prudence Trust began to diverge. Plaintiff's approach favored liquidating the Tree Farm and the Deck in order to provide liquidity to Prudence's Trust and also to provide enough funds to maintain the Camp, which approach he thought would be consistent with Prudence's wishes. (Steven Hazen Dep. 18, 20, 34, 81, 97-98, 150-51.) On the other hand, Defendants denied the existence of a liquidity dilemma and preferred to retain all the real property in the Prudence Trust, and, in accordance with Franklin's wishes, to personally undertake repair services and to fund any potential liquidity issues with capital infusions from Mary, Michael, and Steven. (Franklin Hazen Dep. 6; Mary Hazen Dep. 13-19, 27, 72, 90, 94-96; Michael Hazen Dep. 35, 38, 55-57, 98; Mary Hazen Aff. ¶¶ 2-3.)

These differences of opinion culminated in significant family discord, in the removal of Attorney Rider as the Trustee of the Prudence Trust, and in the eventual ostracization of Plaintiff from the other members of his family. (Pl.'s Mot. Partial Summ. J. Ex. H. at 5-6, 11; Defs.' Mot. Summ. J. Exs. X, 19; Steven Hazen Aff. 27-35.) Plaintiff ultimately filed his six Count Complaint on September 28, 2015 alleging in Count I) breach of contract with respect to

3

Defendant, Franklin Hazen; in Count II) breach of an implied contract with respect to Defendant, Franklin Hazen; in Count III) interference with contractual relations as to Defendants, Franklin Hazen, Michael Hazen and Mary Osgood; in Count IV) tortious interference with expected inheritance as to Defendants, Mary Osgood and Michael Hazen; in Count V) undue influence with respect to Defendants, Mary Osgood and Michael Hazen; and in Count VI) a declaratory judgment that the Report of Recommendations is a valid contract. On October 20, 2015, Defendants, Mary Osgood and Michael Hazen, and, separately, Defendant, Franklin Hazen, answered Plaintiff's Complaint and asserted a Counterclaim for a declaratory judgment that the Report of Recommendations is not a valid contract.

Plaintiff filed his First Amended Complaint on May 12, 2016, which added Count VII) declaration of trustee's authority with respect to Defendant, Trustee of the Prudence Trust Robert McDonald, as well as attached Roderic ("Rick") Osgood as a Defendant with respect to Counts III, IV, and V. On May 20, 2016, Defendants Mary and Rick Osgood, Michael Hazen, and separately on May 23, 2016, Defendant, Franklin Hazen, filed answers and a counterclaim to Plaintiff's First Amended Complaint, and restated their counterclaim for a declaratory judgment that the Report of Recommendations is not a contract. On May 31, 2016, Defendant, Trustee of the Prudence Trust Robert McDonald, filed his answer to Plaintiff's Complaint.

On September 19, 2016, Plaintiff filed a Motion for Leave to file a Second Amended Complaint. In his proposed amendments, Plaintiff seeks to change the party status of Defendant, Michael Hazen, to a party-in-interest, and to make other minor changes. Defendants filed an opposition to Plaintiff's Motion on September 22, 2016, arguing that Plaintiff's Motion was (1) untimely, (2) that undue prejudice would result to Defendants, and (3) that Plaintiff's amendments would be futile.

4

On September 30, 2016, while his Motion to Amend his Complaint was pending with the Court, Plaintiff moved for Partial Summary Judgment concerning Count VI) declaratory judgment that the Report of Recommendations is a valid contract, Count VII) declaration of trustee's authority with respect to Defendant, Trustee of the Prudence Trust Robert McDonald, and for the dismissal of Defendants' Counterclaim seeking a declaratory judgment that the Report of Recommendations is not a valid contract. On the same day, Defendants filed a Motion for Summary Judgment as to all Counts of Plaintiff's Complaint.

## II. PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

### A. Standard of Review

When confronted with "both a motion for a summary judgment and a Rule 15(a) motion to amend pleadings, considerations of finality and judicial economy suggest that a court should dispose of the pending Rule 15(a) motion prior to entertaining a summary judgment." *Kelly v. Michaud's Ins. Agency*, 651 A.2d 345, 346 (Me. 1994); *Dunelawn Owners' Ass'n v. Gendrau*, 2000 ME 94, ¶ 6 n.6, 750 A.2d 591 ("we stress once again that a court should explicitly rule on a pending motion to amend a complaint prior to ruling on a pending motion for summary judgment."). Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." M.R. Civ. P. 15(a). The motion will not be granted when the moving party is acting in bad faith or for delay, or where there exists the presence of undue prejudice. *Kelly*, 651 A.2d 345 at 346.

### B. Discussion

In support of their argument, Defendants argue, *inter alia*, that Plaintiff's proposed Second Amended Complaint comes almost six-months after the deadline established for amendments to pleadings. (Defs.' Joint Opp. to Pl.'s Mot. to file a Second Am. Compl. 3.)

5

Plaintiff legitimately retorts that through the process of discovery, he has discovered new evidence that warrants an amendment to his Complaint. (Pl.'s Reply to Def.'s Opp. to file Second Am. Compl. 1-2.)

Plaintiff, however, concedes that the substantive changes of his proposed amendment only reflect the fact that Michael Hazen's party status is changed from "defendant" to "party in interest," and that the claims for tortious interference and the declaration of trustee authority will incorporate the fact that Defendant, Mary Osgood, allegedly acted through fraud. (*Id.* at 1.)

The Court is not satisfied that these exiguous amendments warrant the filing of a Second Complaint. Plaintiff is not adding any new claims, facts, or parties, and his admitted purpose is to rename a current defendant and to add language to his existing claims highlighting the existence of fraudulent conduct. Furthermore, claims of fraud, even within the confines of intentional interference with an advantageous relationship, must be plead with particularity, M.R. Civ. P. 9(b); *James v. MacDonald*, 1998 ME 148, ¶ 8, 712 A.2d 1054; *Levesque v. Lilley*, No. CV-13-206, 2014 Me. Super. LEXIS, at *7 (June 9, 2014) (citing to *James*).

The Court is not aware that Plaintiff's proposed Complaint would satisfy these heightened requirements of Rule 9(b). Moreover, at this stage in the litigation, Plaintiff's admittedly slight amendments are outweighed by the undue delay that would result from a filing of a second amended complaint. The Court would have to postpone its consideration of both parties' Motions for Summary Judgment, and the size of the already voluminous file would only continue to increase. The Court is satisfied that the purposes behind Plaintiff's Motion can be accomplished without an amendment to Plaintiff's Complaint. The Court will consider fraud in its analysis of the Cross Motions for Summary Judgment, and Defendant, Michael Hazen, will

6

hereinafter be made a party-in-interest.[1] Therefore, Plaintiff's Motion is unnecessary, and the Court denies Plaintiff's Motion for Leave to Amend his Complaint.

## III. CROSS MOTIONS FOR SUMMARY JUDGMENT

### A. Standard of Review

Cross motions for summary judgment "neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se.*" *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, A.4d 646. Under M.R. Civ. P. 56, summary judgment is appropriate when review of the parties' statements of material facts and record evidence to which the statements refer, considered in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact that is in dispute and the moving party is entitled to judgment as a matter of law. *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733. A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between two competing versions of the facts. *Stewart-Dore v. Webster Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773. The evidence offered to establish a dispute as to a material fact, submitted in opposition to a motion for summary judgment, "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 19, 60 A.3d 759.

When acting on a motion for summary judgment, a court may not make inferences based on credibility or weight of the evidence. *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 16, 917 A.2d 123 (citing *Emerson v. Sweet*, 432 A.2d 784, 785 (Me. 1981)). A party who moves for summary judgment is entitled to a judgment only if the party opposing the motion, in

---

[1] The Court notes that Plaintiff is free to file a Motion to conform the Complaint to the evidence adduced at trail, if and when fraud is proven.

7

response, fails to establish a prima facie case for each element of his cause of action. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 12, 48 A.3d 774.

B.     Count I) Breach of Contract

As a threshold matter, Defendants rehash their arguments from their Motion to Dismiss by arguing that Plaintiff's claims are barred by the previous Release Agreement entered into between the parties on May 31, 2013. (Defs.' Joint Mot. Summ. J. 5.) Defendants focus the Court's attention on Plaintiff's statement that "the statute of limitations for enforcing the provisions of Mother's Trust and her estate planning agreements could have run out on October 7, 2015, 6 years after her death." (*Id.*) This statement is not determinative of the fact that the claim arose in 2009, only that there exists a distinct possibility that the claim "could" have arose solely during that time period. As articulated in the previous Order on Defendants' Motion to Dismiss, Plaintiff is barred from asserting any claim arising prior to May 31, 2013. However, as Plaintiff has not specified a time frame for the alleged conduct giving rise to his claim for breach of contract, the Court is effectively inhibited from deciding, as a matter of law, that Defendants are entitled to summary judgment.

Furthermore, viewing the evidence in the light most favorable to Plaintiff as the non-moving party, it is evident that a claim could have arisen after the Release Agreement was entered into. For example, Trustee Robert Macdonald was appointed to the position of Trustee after the Release Agreement was entered into. Plaintiff alleges, in part, that Defendants intimidated Trustee MacDonald into not disposing of real property within the Prudence Trust to generate liquidity. The fact that this conduct took place after the Release Agreement was entered into highlights the probability that Plaintiff's claim, in part, also arose after the Release Agreement was executed.

8

Moving on to address the substance of Plaintiff's breach of contract claim, in order to establish a valid contract there must be mutual assent to be bound by the material terms of the agreement, and consideration. *Tobin v. Barter*, 2014 ME 51, ¶ 9, 89 A.3d 1088; *Snow v. BE&K Constr. Co.*, 126 F. Supp. 2d 5, 9 (D. Me. 2001). The existence of a contract is a question of fact. *Tobin*, 2014 ME 51, ¶ 9, 89 A.3d 1088. In order to prove a breach of a valid contract, a plaintiff must further show (1) that the defendant breached a material term of the contract; and (2) that the plaintiff suffered damages on account of the defendant's material breach. *Id.* ¶ 10. Both elements are also questions of fact. *Id.*

Here, Defendants make a compelling argument that the "Report of Recommendations" is not a contract. Defendants argue that the contract is not sufficiently definite to fix the legal liabilities between the parties. *See Stanton v. Univ. of Maine Sys.*, 2001 ME 96, ¶ 13, 773 A.2d 1045 ("the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties."). Defendants counters that the report constituted a mere recommendation, but when Franklin and Prudence signed it, and Franklin said they both agreed with it, that it became a binding succession contract.

It is clear from the parties' contentions that whether the "Report of Recommendations" constitutes a valid contract is a critical issue in this case. Unfortunately for Defendants, the resolution of Plaintiff's claim for breach of contract requires the determination of disputed and material factual issues, which the Court is inhibited from engaging in at the summary judgment stage. For this reason, Defendants' Motion for Summary Judgment as to Count I is denied.

C.    Count II) Breach of an Implied Contract

In Count II of his Amended Complaint, Plaintiff claims that Defendant, Franklin Hazen, breached an implied contract between himself and Prudence by failing to leave the remainder of

9

his estate equally to Mary, Michael and Steven, by failing to ensure that the Camp remains within the family and is preserved, and by failing to liquidate other assets in the Trust in order to create capital to preserve the Camp. (Pl.'s Am. Compl. ¶¶ 49-55; Pl.'s Opp. Defs.' Mot. Summ. J. 16.)

In contrast to a written contract, "[a]n implied contract refers to that class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words." *Stanton v. Univ. of Maine Sys.*, 2001 ME 96, ¶ 12, 773 A.2d 1045 (quoting 1 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 1:5, at 20 (4th ed. 1990)).

Here, Plaintiff argues that Franklin made a promise to Prudence, embodied in the Report of Recommendations. Since the Report constitutes a written document as well as the only promise Plaintiff relies upon to formulate his claim for breach of an implied promise, Plaintiff has not effectively pointed to any oral promise, as necessary in order to adequately establish a foundation to support his claim for breach of an implied contract. This being the case, his claim must fail on that basis alone. For these reasons, the Court grants Defendants Motion for Summary Judgment as to Count II.

D.      Count III) Interference with Contractual Relations

In Count III, Plaintiff claims that Defendants, Mary, Rick, and Franklin, interfered with the Report of Recommendations by, *inter alia*, allegedly intimidating the Trustee of Prudence's Trust to refrain from selling any real property in the Trust. (Pl.'s Am. Compl. ¶¶ 56-59.)

1.      Mary and Franklin

Interference with contractual relations occurs "whenever a person by fraud or intimidation procures the breach of a contract that would have continued but for such wrongful

10

interference, that person can be liable in damages for such tortious interference." *Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989); *see also Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 12, ___ A.3d ___. The First Circuit has stated that the defendant in a tortious interference case must be a stranger to the contract. *Richards v. Relentless, Inc.*, 341 F.3d 35, 43-44 (1st Cir. 2003). Over a century ago, in *Perkins*, the Law Court apparently impliedly incorporated this requirement into a claim for intentional interference by stating that "for a person to wrongfully . . . that is by the employment of unlawful or improper means, induce a *third party* to break a contract with the *plaintiff*, whereby injury will naturally and probably, and does in fact, ensue to the plaintiff, is actionable." *Perkins v. Pendleton*, 90 Me. 166, 171-72, 38 A. 96, 97 (Me. 1897) (emphasis added). The Law Court recently stated that a case for intentional interference can be shown when a defendant either induces a third-party, or the plaintiff, to break a contract. *Harlor*, 2016 ME 161, ¶¶ 12-13, ___ A.3d ___ ("Generally, a plaintiff claiming tortious interference alleges that the defendant interfered with a contract or prospective economic advantage involving the plaintiff and someone other than the defendant." The Court then rejected the notion that the defendant's conduct must be directed solely at the plaintiff and referenced a First Circuit case which stated a claim for intentional interference lies where it is alleged "(a) that the defendant interfered with the plaintiff's advantageous relationship with a third party by committing fraud or intimidation against the third party or (b) that the defendant interfered with the plaintiff's relationship with a third party by committing fraud or intimidation against the plaintiff."). Therefore, it is established that the defendant's conduct can be directed at either the plaintiff or a third-party, but that the defendant must not be a party to the contract. This protective doctrine is known as the "stranger doctrine."

11

Here, it is undisputed that Franklin was a party to the contract between himself and Prudence, however, Defendants allege that Mary, as a third-party beneficiary, is also a party to the contract and similarly cannot be sued. The Court must, therefore, determine whether third-party beneficiaries are "parties" to a contract sufficient to protect them from an intentional interference with economic relations claim.

This provides an opportunity of first impression, as the Court is unaware of any existing Maine authority governing this issue. Looking then to Courts around the country, many have found that a third-party beneficiary is a party to the contract for the purposes of intentional interference with an economic relationship. *Hanley v. Continental Airlines Inc.*, 687 F. Supp. 533, 538 (D. Colo. 1988) ("Thus I conclude that an intended third party beneficiary to a contract may assert a claim for tortious interference with contractual relations to recover for intentional and improper interference with its rights under that contract."); *Tamposi Assocs. v. Star Mkt. Co.*, 119 N.H. 630, 632 (1979) ("A third-party beneficiary may recover from one who intentionally interferes with the contract that established the third party's rights."); *Reynolds v. Owen*, 34 Conn. Supp. 107, 111 (1977) ("As a third-party beneficiary, the plaintiff possesses the requisite contractual rights to bring a cause of action in tort."); *CSY Liquidating Corp. v. Harris Trust & Sav. Bank*, 162 F.3d 929, 932-33 (7th Cir. 1998) ("[T]he tort of intentional interference with contract is meant to protect the parties (including third-party beneficiaries, assignees, and others having the rights of the parties). . . ."); *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 540 (D. MD. 2006) (citing to *CSY Liquidating Corp*, 162 F.3d 929 at 932-33); *K & K Recycling Inc. v. Alaska Gold Co.*, 80 P.3d 702, 716 n.22 (Ak. 2003) (citing to *CSY Liquidating Corp*, 162 F.3d 929 at 932-33).

This line of reasoning is also supported by the Restatement, which provides "[t]hus, if A

12

induces B to break a contract with C, persons other than C who may be harmed by the action as, for example, his employees or suppliers, are not within the scope of the protection afforded by this rule, unless A intends to affect them." Restatement (Second) of Torts § 766 cmt. p (1979). The restatement highlights the importance of intent in the final determination of party status for purposes of the stranger doctrine. The Court finds the case law and the restatement persuasive and sees no reason why intended third-party beneficiaries, such as Mary, should not be included within the protection of the stranger doctrine. For these reasons, in this case, Mary, as an intended third-party beneficiary to the Report, was not a stranger to it, because of her third-party beneficiary status. Therefore, under the stranger doctrine, Plaintiff's claim for intentional interference with an economic relationship cannot survive. Consequently, the Court Grants Defendants' Motion for Summary Judgment as to Count III with respect to Franklin and Mary.

2. Rick

In regards to Defendant, Rick Osgood, Plaintiff indicates that after Trustee MacDonald stated his intentions to list the Tree Farm for sale, that Rick threatened to remove him from his position as Trustee. (MacDonald Dep. 73; Pl.'s Opp. Defs.' Joint Mot. Summ. J. 8.) Plaintiff argues that this conduct establishes intentional interference by fraud, or through intimidation. (Pl.'s Opp. Defs.' Joint Mot. Summ. J. 6-9.) In order to prove tortious interference with an advantageous relationship by fraud, the plaintiff must show:

> (1) making a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*Rutland v.* Mullen, 2002 ME 98, ¶ 14, 798 A.2d 1104; *see Id.* ¶ 15 ("The assertion of a legal right, however, is by itself insufficient as a matter of law to support a finding of interference by fraud."). Plaintiff has not provided sufficient facts to demonstrate that Rick, engaged in tortious

13

interference through fraud. Plaintiff has provided numerous facts exhibiting the fact that Defendant, Mary Osgood, engaged in action that may constitute tortious interference through fraud, but has failed to display any conduct on behalf of Rick. (Pl.'s Opp. Defs.' Joint Mot. Summ. J. 7 (citing to Pl.'s Opp. S.M.F. ¶ 89); Pl.'s Opp. S.M.F. ¶ 89 (citing instances where Mary engaged in allegedly fraudulent conduct, but not mentioning Rick.)) Accordingly, there is no genuine issue of fact in dispute that would salvage Plaintiff's tortious interference by means of fraud claim against Rick.

To establish a case for intentional interference through intimidation, the plaintiff must show the presence of unlawful extortion or coercion. *Rutland*, 2002 ME 98, ¶ 16, 798 A.2d 1104; *Holdsworth v. Bernstein*, NO. CV-13-03, 2014 Me. Super. LEXIS 265, at *51-52 (Aug. 27, 2014) (citing to *Rutland*); *see Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989 ("intimidation is not restricted to 'frightening a person for coercive purposes.'"). Black's Law Dictionary defines extortion as "[t]he act or practice of obtaining something or compelling some action by illegal means, as by force or coercion." *Black's Law Dictionary* 520 (9th ed. 2009). Coercion is defined as "[c]ompulsion by physical force or threat of physical force," or "[c]onduct that constitutes the improper use of economic power to compel another to submit to the wishes of one who wields it." *Id.* at 236; *see Holdsworth*, 2014 Me. Super. LEXIS 265 at *51-52 (citing to Black's Law Dictionary to define coercion and compulsion). From the definitions provided by Black's Law Dictionary, as well as the discussion in *Pombriant* and *Rutland*, it becomes clear that coercion can take the form of either physical harm or threats of physical harm, or economical harm or threats of economical harm.

In this case, there is no allegation that Rick physically threatened or harmed Trustee MacDonald. The only remaining argument is whether Rick's threat to remove Trustee

14

Macdonald constituted an economic threat or harm covered under the intentional interference claim. Defendants' argue that since Trustee MacDonald does not accept any compensation for his services that "any suggestion that Defendant might exercise their right to remove Mr. MacDonald as an uncompensated Trustee is not actionable." (Pl.'s Joint Mot. Summ. J. 15.) However, Trustee MacDonald explicitly stated that "[i]t is not my present intention to take reasonable compensation for my services, *but I reserve the right to do so, both retrospectively and prospectively.*" (Pl.'s Mot. Partial Summ. J. Ex. H. at 6 (emphasis added).) Therefore, it is clear that while Trustee MacDonald did not receive present remuneration, he retained the right to be compensated for all of his previous work, and if Roderic were to threaten to remove him, Trustee MacDonald would potentially be harmed economically.

Nonetheless, Defendants have not provided any other facts tending to support the fact that through Rick's threat, Trustee MacDonald was coerced into removing the Tree Farm for sale. Furthermore, Rick did not have the authority to remove Trustee MacDonald, as he was not a beneficiary of the Trust. In essence, Rick wielded no power over Trustee MacDonald to utilize to bend Trustee MacDonald's will into submission. For these reasons, Plaintiff's claim against Rick rests upon conclusory allegations, improbable inferences and unsupported speculation. Accordingly, summary judgment is warranted for Defendant, Rick, with respect to Count III. *See Dyer v. Dot*, 2008 ME 106, ¶ 14, 951 A.2d 821.

E.      Count IV) Tortious Interference with an Expected Inheritance and Count V) Undue Influence

In Count IV, Plaintiff alleges that Defendants, Mary and Rick, *inter alia* and through the use of undue influence, intimidation, or duress, caused Defendant, Franklin, to modify his Trust to significantly reduce the amount of Plaintiff's inheritance. (Pl.'s Am. Compl. ¶¶ 60-66.) Similarly, in Count V) Plaintiff alleges that Mary and Rick exhibited undue influence upon

15

Franklin, through the existence of a confidential relationship, and for the purpose of coercing him into reducing the inheritance that Steven would receive. (*Id.* ¶¶ 67-71.)

To establish a claim for tortious interference with an expected inheritance, the following elements must be met: (1) the existence of an expectancy of inheritance; (2) an intentional interference by a defendant through tortious conduct, such as fraud, duress, or undue influence; (3) a reasonable certainty that the expectancy of inheritance would have been realized but for the defendant's interference; and (4) damage resulting from that interference. *Morrill v. Morrill,* 1998 ME 133, ¶ 7, 712 A.2d 1039. Undue influence is the "unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relationship between them is justified in assuming that that person will not act in a manner inconsistent with his welfare." *Theriault v. Burnham,* 2010 ME 82, ¶ 6, 2 A.3d 324 (citing to *Desmarais v. Desjardins,* 664 A.2d 840, 843 (Me. 1995)). Undue influence may be presumed where a confidential relationship exists. *Id.* A confidential relationship, in turn, occurs when one individual "places trust and confidence in the defendant and there was a great disparity of position and influence in the relationship." *Id.* (citing to *Ruebsamen v. Maddocks,* 340 A.2d 31, 36 (Me. 1975)).

Here, Plaintiff expected to receive one third of the assets held within the Franklin Trust. (Franklin G. Hazen Revocable Trust Agreement, Defs.' Mot. Summ. J. Ex. G.) Subsequent to executing his Trust, Plaintiff alleges that Defendants, Mary and Rick, through the exertion of undue influence or fraud, caused Franklin to modify his Trust to Plaintiff's detriment.

Defendants rely on the fact that Attorney Watson, who executed Franklin's second Trust, stated that Franklin was not under any undue influence and was confident that the changes Franklin was making to his Will were the result of his own free will. (Watson Dep. 10-12, 26.)

16

Defendants also rely on Mr. Hazen's own testimony that Steven was the only child who ever exerted pressure on him. (Franklin Hazen Dep. 7.)

Plaintiff effectively counters by arguing that Mary and Rick possess a confidential relationship with Franklin, giving rise to the corresponding presumption of undue influence. Mary has received a significant benefit from Franklin's Second Trust, because she currently holds a one half interest in the second Trust, compared to her one-third interest in the First Trust. Mary is also named on Franklin's bank accounts, and Rick manages Franklin's second Trust. (Pl.'s Opp. Defs.' Mot. Summ. J. 11.)

Plaintiff also references an email from Mary Hazen, in which she stated, "[Roderic and I] are encouraging Dad to put in specific amounts for Susan and Steven instead of just a 4-way split." (Pl.'s Opp. Defs.' Mot. Summ. J. Ex. 3.) Mary Hazen testified in her deposition that she encouraged her father to leave Plaintiff in the Franklin Trust, and that her father, not herself, wanted to exclude Steven from his Trust. (Mary Hazen Dep. 106-7.) Unfortunately, Mary's email directly contradicts her deposition testimony, and creates a genuine dispute as a material fact, as to whether and to what extent she and Rick influenced, or did not influence, Franklin. For these reasons, the Court denies Defendants Motion for Summary Judgment as to Count IV) and Count V) as to Defendants' Mary and Rick.

F.    Count VI) Declaratory Judgment

In Count VI, Plaintiff seeks the Court to declare that the Report of Recommendations a valid, enforceable contract concerning succession between Franklin and Prudence Hazen. (Pl.'s Compl. ¶¶ 72-74.) Conversely, Defendants, in their counterclaim, seek a judgment that the Report is not a valid, enforceable contract.

Under the Maine Declaratory Judgment Act, "[a]ny person interested as . . .an devisee,

17

legatee . . . may have a declaration of rights or legal relations. . . [t]o determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings." 14 M.R.S. § 5956 (2015). Two prerequisites to the Act require (1) that the declaratory judgment will "terminate the controversy or remove an uncertainty," and (2) that "all persons shall be made parties who have or claim any interest which would be affected by the declaration and no declaration shall prejudice the rights of persons not parties to the proceeding." 14 M.R.S. §§ 5957, 5963 (2015).

Here, Plaintiff and Defendants dispute whether the Report is a contract. The Court is satisfied that, through this dispute, a controversy exists. However, not all persons who have an interest in the Report are parties to the instant proceeding. The Report significantly and detrimentally forecloses any inheritance that would accrue to Susan. Thus, a declaration that a contract exists would prejudice the rights of Susan without affording her the opportunity to be present.

In addition, under 14 M.R.S. § 5961, "when a proceeding under this chapter involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending." As mentioned in the Court's discussion of Count I, breach of contract, an issue of fact lingers with respect to whether the Report is a valid contract. This issue of fact in combination with Susan's statutory right to be made a party to the action effectively prohibit the Court from issuing a declaratory judgment.

G.    Count VII) Declaration of Trustee Authority

In Count VII, Plaintiff asks the Court to issue a declaratory judgment ordering the Trustee of Prudence's Trust, Robert McDonald, to sell real property from the Trust in order to

18

establish liquidity in the trust.

As mentioned above, there are two prerequisites to obtaining a declaratory judgment. The first is that the Court's decision would "terminate the controversy or remove an uncertainty." 14 M.R.S. § 5957. Second, all persons having an interest in the proceeding must be made parties to the action. 14 M.R.S. § 5963. Previously, the Court declined to issue a declaratory judgment on the basis that Susan was not made a party to the proceeding and an issue of fact permeated throughout the dispute.

Here, the Court is satisfied that a controversy exists. Both parties dispute the authority of the Trustee. Defendants' take the position that the Trustee must get permission from Franklin Hazen before disposing of any real property. (Defs.' Mot. Summ. J. S.M.F. ¶¶ 103-110.) On the other hand, Plaintiff opines that no such permission is necessary or required. (Pl.'s Mot. Partial Summ. J. ¶¶ 100-101.)

However, Prudence's Trust makes explicit reference to Susan, and reserves authority in the Trustee to reinstate her as a beneficiary under the Trust. The statute makes it clear that any person with an interest shall be made a party. 14 M.R.S. § 5963. Susan's interest affords her a legitimate, statutory-right to be made a party. Therefore, her absence operates to preclude the Court's ability to issue a declaratory judgment. For these reasons, both parties respective Motions for Summary Judgment as to Count VII are denied.

The Entry is:

1) Plaintiff's Motion for Leave to Amend his Complaint is **DENIED**.

2) Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

3) Defendants' Motion for Summary Judgment is **GRANTED** as to Counts II, and III.

19

4) Defendants' Motion for Summary Judgment as to Counts I, IV, V, VI, and VII is **DENIED**.

5) Defendant's Motion to Dismiss Defendant Michael Hazen is **GRANTED** without prejudice. Michael Hazen is hereafter a Party-in-Interest.

6) This Order shall be incorporated into the docket by reference pursuant to M.R. Civ. P. 79.

Dated: June 13, 2017

Lance E. Walker
Justice, Maine Superior Court

20

STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CUMSC-CV-15-438

STEVEN KELSEY HAZEN,

      Plaintiff,

      v.

FRANKLIN GRAHAM HAZEN,
MARY ELIZABETH OSGOOD,
MICHAEL FRANKLIN HAZEN,
RODERIC OSGOOD, and
ROBERT E. MacDONALD, trustee for the
PRUDENCE ELEANOR HAZEN TRUST,

      Defendants,

      and

RODERIC OSGOOD, trustee for the
FRANKLIN GRAHAM HAZEN
REVOCABLE TRUST,

      Party-in-Interest.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON DEFENDANTS' MOTION
TO DISMISS COUNTS I, II, III, VI, & VII
OF THE AMENDED COMPLAINT,
DEFENDANTS' MOTION TO
DISQUALIFY, & PLAINTIFF'S MOTION
FOR SANCTIONS

STATE OF MAINE
Cumberland, ss, Clerk's Office

AUG 0 9 2016

RECEIVED

Presently before the court are the following motions: (1) Defendants Mary Elizabeth Osgood and Michael Franklin Hazen's motion to dismiss Counts I, II, III, VI, and VII of Plaintiff Steven Kelsey Hazen's amended complaint; (2) Defendants Mary Osgood and Michael Hazen's motion to disqualify Plaintiff's counsel, Colby Wallace, Esq.; and (3) Plaintiff's motion for sanctions. Defendant Franklin Graham Hazen has moved to join Mary Osgood and Michael Hazen's motions.[1] Based on the following, Defendants' motion to dismiss and motion to disqualify are both denied. Plaintiff's motion for sanctions is also denied.

---

[1] Franklin Hazen's motion to join is granted. Mary Osgood, Michael Hazen, and Franklin Hazen are collective referred to as "Defendants" in this order. Although Defendant Roderic Osgood is represented by the same counsel as Mary Osgood and Michael Hazen, Roderic Osgood is not a party to the motion to dismiss or motion to disqualify. Roderic Osgood is not a beneficiary the Prudence Trust or signatory of

## I.     BACKGROUND

According to Plaintiff's amended complaint, Franklin Hazen and Prudence Eleanor Hazen were married until Prudence Hazen's death in October 2009. (Am. Compl. ¶ 15.) On March 25, 2009, Franklin and Prudence Hazen entered into an agreement regarding the organization, ownership, and disposition of their respective estates by signing a document entitled "Report of Recommendations Regarding the Estates of Franklin G. and Prudence E.K. Hazen" (the "Agreement"). (*Id.* ¶¶ 16-17.) According to Plaintiff, the Agreement provided that Franklin and Prudence Hazen would divide their assets between two trusts, the Prudence Eleanor Hazen Trust (the "Prudence Trust") and the Franklin Graham Hazen Revocable Trust (the "Franklin Trust"). (*Id.* ¶¶ 5-6, 18.) The Prudence Trust and the Franklin Trust were established on April 17, 2009, in accordance with the Agreement. (*Id.* ¶¶ 5-6, 28-29.) Plaintiff asserts that Franklin Hazen, Mary Osgood, Michael Hazen, and he are the four beneficiaries of the Prudence Trust. (*Id.* ¶ 8.) Plaintiff asserts that Franklin Hazen is the only beneficiary of the Franklin Trust while he is living. (*Id.* ¶ 9.) Plaintiff asserts that, as a result of a March 25, 2013 amendment to the trust, only Mary Osgood and Michael Hazen have remainder rights in the Franklin Trust. (*Id.* ¶ 10.)

According Plaintiff, one of the assets transferred to the Prudence Trust was a parcel of real property located 70 Murch Point Road in South Casco, Maine referred to as the "Camp." (*Id.* ¶ 19.) According to Plaintiff, the Agreement provided that the Camp would be preserved for Franklin and Prudence Hazen's use during their lives and would then pass to Mary Osgood, Michael Hazen, and Plaintiff, upon the death of the second to die of Franklin and Prudence

the Release. Thus, the affirmative defense raised by Defendants' motions does not apply to him. Similarly, Defendant Robert E. MacDonald, as trustee for the Prudence Trust, is also not a beneficiary of the trust or signatory to the Release. Thus, the affirmative defense raised by Defendants' motions also does not apply to him. Defendant Robert E. MacDonald, as trustee for the Prudence Eleanor Hazen Trust, has not appeared or participated in this action.

2

Hazen. (*Id.* ¶ 22.) According to Plaintiff, the Agreement provided that all other property held by both the Prudence and Franklin Trusts would be managed, liquidated, subdivided and generally utilized to maintain and improve the Camp and to take care of Franklin and Prudence Hazen during their lives. (*Id.* ¶ 23.) Prudence Hazen died on October 7, 2009. (*Id.* ¶ 30.)

On May 31, 2013, Plaintiff, Mary Osgood, Michael Hazen, and Franklin Hazen, as beneficiaries of the Prudence Trust, entered into a Nonjudicial Settlement Agreement regarding the Prudence Trust (the "Settlement Agreement"). (Defs. Mot. Dismiss, Ex. A.) As part of the Settlement Agreement, Plaintiff, Mary Osgood, Michael Hazen, and Franklin Hazen entered into a Consent and Release Agreement (the "Release"), discharging each other from all claims based on actions taken or not taken with regard to the Prudence Trust. (*Id.*) The Settlement Agreement and the Release were incorporated into a June 5, 2013 Order issued by the Cumberland County Probate Court, docket number 2013-0695. (Am. Compl. ¶ 5, Ex. A.)

Plaintiff initially filed his complaint in this action on September 28, 2015. Plaintiff filed an amended complaint May 12, 2016. Plaintiff's amended complaint alleges that the trustees of both the Prudence and Franklin Trusts have failed or refused to market or sell the property held by the Prudence and Franklin Trusts in accordance with the Agreement. (*Id.* ¶ 31-32.) Plaintiff alleges that the trustees' failure to liquidate all property in Prudence and Franklin Trusts is the result of repeated intentional interference by Defendants. (*Id.* ¶ 31-33.) Plaintiff alleges that, as a result of Defendants' interference, the Camp has not been maintained or improved in accordance with the Agreement. (*Id.* ¶ 34.) Plaintiff also alleges that Franklin Hazen has materially altered the terms of the Franklin Trust by reducing Plaintiff's one-third share of the Franklin Trust as a result of undue influence from Mary Osgood, Michael Hazen, and Roderic Osgood. (*Id.* ¶¶ 36-38.) Plaintiff's amended complaint asserts claim for breach of contract

3

(Count I), breach of implied contract (Count II), interference with a contractual relationship (Count III), tortious interference with an expected inheritance (Count IV), undue influence (Count V), declaratory judgment (Count VI), and a declaration of trustee's authority (Count VII). (*Id.* ¶¶ 45-80.)

Mary Osgood, Michael Hazen, and Roderic Osgood filed an answer and counterclaim on May 20, 2016. Franklin Hazen filed his answer and counterclaim on May 23, 2016. On May 20, 2016, Defendants Mary Osgood and Michael Hazen also filed a motion to dismiss Counts I, II, III, VI, and VII of the amended complaint for failure to state a claim or, in the alternative, to disqualify Plaintiff's counsel, Colby Wallace, Esq. Franklin Hazen filed a motion to join Mary Osgood and Michael Hazen's motion to dismiss and their motion to disqualify on June 6, 2016. Plaintiff filed an opposition to the motion to dismiss and motion to disqualify on June 8, 2016. In his opposition, Plaintiff requests that the court impose sanctions on Defendants. Defendants Mary Osgood and Michael Hazen filed a reply on June 17, 2016. The court addresses each motion in turn.

## II. DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Standard of Review

Defendants have moved to dismiss Counts I, II, III, VI, and VII of Plaintiff's amended complaint pursuant to Maine Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Defs. Mot. Dismiss 1-3.) Typically, Rule 12(b) motions are made before the filing of a responsive pleading. *See* M.R. Civ. P. 12(b). Defendants in this case simultaneously answered and moved to dismiss. Therefore, Defendants' motion is more accurately a motion for judgment on the pleadings pursuant to Rule 12(c). *See* M.R. Civ. P.

4

12(c) ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.").

However, a motion for judgment on the pleadings by a defendant "is the equivalent of a motion to dismiss for failure to state a claim." *MacKerron v. MacKerron*, 571 A.2d 810, 813 (Me. 1990); 2 Harvey, *Maine Civil Practice* § 12:14 at 429-30 (3d ed. 2011). Therefore, regardless of whether Defendants' motion is titled as a motion to dismiss for failure to state a claim or motion for judgment on the pleadings, the court's analysis is the same. Both motions test the legal sufficiency of the complaint. *MacKerron*, 571 A.2d at 813. The sufficiency of the complaint is a question of law. *Id.* The court reviews the complaint in the light most favorable to the plaintiff to determine whether the complaint "sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676 (internal citation and quotation marks omitted). "A complaint is sufficient unless it appears to a certainty the plaintiff is entitled to no relief under any set of facts he might prove in support of his claim." *MacKerron*, 571 A.2d at 813 (internal citation, alterations, and quotation marks omitted).

The sole basis for Defendants' motion to dismiss is the May 31, 2013 Release. (Defs. Mot. Dismiss 5.) Defendants assert that, under the terms of the Release, they were released from the claims asserted in Counts I, II, III, VI, and VII of the amended complaint. (*Id.* at 5-10.) Release is an affirmative defense. M.R. Civ. P. 8(c). Generally, a defendant may not assert affirmative defenses in either a motion for judgment on the pleadings or a motion to dismiss for failure to state a claim. *MacKerron*, 571 A.2d at 813; 2 Harvey, *Maine Civil Practice* § 12:14 at 429-30. An affirmative defense may be raised in motion to dismiss for failure to state a claim only if the facts giving rise to the defense appear on the face of the complaint. 2 Harvey, *Maine*

5

*Civil Practice* § 12:12 at 423. Release has been recognized as an affirmative defense that may be raised on a motion to dismiss for failure to state a claim. *Id.* § 12:12 at 424-25 (citing *Hoover v. Lacey*, 80 F. Supp. 691 (D.D.C. 1943)).

Neither the Settlement Agreement nor the Release are referenced in or attached to Plaintiff's amended complaint. *See* (Am. Compl.) Defendants have provided the court with a copy of the Settlement Agreement and the Release as part of their motion to dismiss. (Defs. Mot. Dismiss, Ex. A.) Normally on a motion to dismiss for failure to state a claim, only the facts alleged in the complaint are considered by the court. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. If the court considers materials outside the pleading, the court must convert the motion to dismiss into a motion for summary judgment under Rule 56. M.R. Civ. P. 12(b). However, in limited circumstances, the court may consider certain extraneous documents without converting a motion to dismiss to one for a summary judgment. *Moody*, 2004 ME 20, ¶ 9, 843 A.2d 43. The court may consider "official public documents, documents that are central to the plaintiff's claims, and documents referred to in the complaint, without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged." *Id.* ¶ 10.

Although the Release is not referenced in or attached to the amended complaint, the Settlement Agreement and the Release were incorporated in and attached to the June 5, 2013 Probate Court Order. (Am. Compl. ¶ 5, Ex. A.) The Probate Court Order is referenced in and attached to the amended complaint without the Settlement Agreement or the Release. (*Id.*) Defendants argue that, because the Settlement Agreement and the Release were incorporated in and attached to a court order, they are public documents. (Defs. Mot. Dismiss 4-5.) Plaintiff

6

does not dispute that the Settlement Agreement and the Release are public documents, nor their authenticity. (Pl. Opp'n to Defs. Mot. Dismiss 2-6.)

Because June 5, 2013 Probate Court Order, which references both the Settlement Agreement and the Release, is referenced in and attached to the amended complaint, the Settlement Agreement and the Release constitute documents referred to in the amended complaint. Moreover, because the Settlement Agreement and the Release were referenced in and attached to the June 5, 2013 Probate Court Order, they are also public documents. Accordingly, the Release is both a document referred to in the amended complaint and a public document under the *Moody* exception. Therefore, the court may consider the Release in deciding Defendants' motion to dismiss without converting the motion to one for summary judgment. The court shall review the facts on the face of the amended complaint in the light most favorable to Plaintiff to determine whether Plaintiff's claims fall with the terms of the Release.

B.     Analysis

Principles of contract law govern the court's interpretation of settlement agreements and releases. *Hawkes v. Commercial Union Ins. Co.*, 2001 ME 8, ¶¶ 20-21, 764 A.2d 258. Like all contracts, a release must be construed to effectuate the parties' intentions as reflected in the written instrument. *See V.I.P., Inc. v. First Tree Dev.*, 2001 ME 73, ¶ 3, 770 A.2d 95. Thus, the court must give the terms used in a release their plain meaning. *See Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 13, 814 A.2d 989. "If a release is absolute and unequivocal in its terms, it cannot be explained by parol evidence and must be construed according to the language that the parties have seen fit to use." *2301 Cong. Realty, LLC v. Wise Bus. Forms, Inc.*, 2014 ME 147, ¶ 10, 106 A.3d 1131 (internal quotation marks and citation omitted). Unless the release expressly reserves a parties' right to bring a cause of action, the release constitutes the complete accord and

7

satisfaction of all claims by immediate parties arising out of the same transaction or occurrence. *Butters v. Kane*, 347 A.2d 602, 604 (Me. 1975).

Section IV of the Release, signed both Plaintiff and Defendants, expressly states:

> IV. Each of the undersigned Beneficiaries hereby releases and forever discharges each of the other Beneficiaries, and his or her estate, heirs, successors and assigns, from and against, all manner of actions, causes of action, suits, accounts, claims and demands whatsoever, whether presently known or unknown, for any action taken or not taken with regard to the [Prudence] Trust through the date hereof and actions reflected herein, that he or she ever had, now has or shall or may have.

(Defs. Mot. Dismiss, Ex. A.) The plain and unambiguous language of the Release contains no limitations on the types of claims covered by its terms. However, the plain and unambiguous language of the Release clearly limits its scope to only claims based on "any action taken or not taken with regard to the [Prudence] Trust *through the date hereof and actions reflected herein*,..." (*Id.*) (emphasis supplied). Thus, based on its plain and unambiguous language, the Release discharges only those claims based on any action or inaction regarding the Prudence Trust that occurred prior to its effective date, May 31, 2013.

### *1. Breach of Contract by Franklin Hazen*

Count I of Plaintiff's complaint is a breach of contract claim against Franklin Hazen. Plaintiff alleges that Franklin Hazen has breached the material terms of the Agreement, which has diminished the assets in both the Prudence Trust and Franklin Trust, injuring Plaintiff as an intended beneficiary. (Am. Compl. ¶¶ 46-48.) Plaintiff alleges that Franklin Hazen has prevented the trustees of the Prudence Trust from selling property held by the Prudence Trust in accordance with the Agreement. (*Id.* ¶¶ 23, 31.) Any breach of contract claims based on any actions by Franklin Hazen regarding the Prudence Trust that occurred prior to May 31, 2013, are barred by the Release. However, Plaintiff's complaint does not specify when Franklin Hazen's

8

alleged conduct occurred. Therefore, any actions by Franklin Hazen regarding the Prudence Trust that occurred after to May 31, 2013, could be the basis for a breach of contract claim against Franklin Hazen.

Plaintiff's amended complaint also alleges that Franklin Hazen has interfered with the trustee of the Franklin Trust's efforts to market property held by the Franklin Trust, has materially altered the terms of the Franklin trust by reducing Plaintiff's share, and has intentionally failed to market property held by the Franklin Trust, all in violation of the terms of the Agreement. (*Id.* ¶¶ 23, 32, 38, 42.) All of these allegations relate to the Franklin Trust and do not directly involve the Prudence Trust. Any claims based on Franklin Hazen's actions regarding the Franklin Trust are not barred by the Release.

Therefore, Plaintiff's amended complaint sufficiently sets forth a claim for breach of contract against Franklin Hazen for any actions regarding the Franklin Trust and any actions regarding the Prudence Trust that occurred after May 31, 2013.

### 2. *Breach of Implied Contract by Franklin Hazen*

Count II of Plaintiff's amended complaint is a breach of implied contract claim against Defendant Franklin Hazen. Plaintiff asserts that Franklin Hazen made certain promises to Prudence Hazen, which Franklin Hazen should have reasonably expected would induce her to act or forebear, and that Prudence Hazen was induced to take action or forbearance. (Am. Compl. ¶ 50.) Plaintiff asserts that Franklin Hazen's alteration of terms of the Franklin Trust are a breach of his promises to Prudence Hazen, which have resulted in injury to Plaintiff as an intended beneficiary of the promises. (*Id.* ¶¶ 52-53.) As previously stated, Plaintiff alleges that Franklin Hazen has materially altered the terms of the Franklin trust by reducing Plaintiff's share. (*Id.* ¶ 38.)

9

On its face, Plaintiff's breach of implied contract claim appears to be solely based on Franklin Hazen's alleged alteration of terms of the Franklin Trust. Plaintiff's breach of implied contract claim does not appear to be based on any conduct by Franklin Hazen regarding the Prudence Trust. Thus, Plaintiff's breach of implied contract claim is not barred by the Release.

Therefore, Plaintiff's amended complaint sufficiently sets forth a claim for breach of an implied contract against Franklin Hazen for actions regarding the Franklin Trust. Any breach of implied contract claim based on actions regarding the Prudence Trust that occurred prior to May 31, 2013, would be barred by the Release.

3. *Interference with a Contractual Relationship by Defendants*

Count III of the complaint is a claim for tortious interference with a contractual relationship against Defendants. Plaintiff asserts that Defendants have interfered with efforts by the current and former trustees of the Prudence Trust to market for sale some or all of the property held by the Prudence Trust, which had resulted in a breach of the Agreement. (Am. Compl. ¶¶ 57-58.) Plaintiff asserts that Defendants intentional conduct has jointly and severally damaged Plaintiff as an intended beneficiary. (*Id.* ¶¶ 58-59.)

On its face, Plaintiff's claim for tortious interference with a contractual relationship appears to be based solely on Defendants' actions regarding the Prudence Trust. Any claims based on actions regarding the Prudence Trust that occurred prior May 31, 2013 are barred by the Release. However, Plaintiff's complaint does not specify when Defendants' alleged interference occurred. Therefore, any conduct by Defendants regarding the Prudence Trust that occurred after May 31, 2013, could support a claim for tortious interference with a contractual relationship.

10

Therefore, Plaintiff's amended complaint sufficiently sets forth a claim for tortious interference with a contractual relationship against all Defendants for any actions regarding the Prudence Trust that occurred after May 31, 2013.

### 4. *Declaratory Judgment*

Count VI of Plaintiff's amended complaint is a claim for declaratory judgment. Plaintiff asserts that there is a controversy among the parties concerning their rights and obligations under the Agreement, the trusts, and the promises, including but not limited to, whether the Agreement is an enforceable contract. (Am. Compl. ¶¶ 73-74.)

Plaintiff's claim for declaratory judgment is not based on any prior action or inaction regarding the Prudence Trust. On it face, Plaintiff's claim for declaratory judgment seeks a judicial determination of the parties' rights and obligations under the Agreement, the trusts, and the promises going forward. Therefore, Plaintiff's claim for declaratory judgment is not barred by the Release. Accordingly Plaintiff's amended complaint sufficiently sets forth a claim for declaratory judgment.

### 5. *Declaration of Trustee Robert E. MacDonald's Authority*

Count VII of Plaintiff's amended complaint is claim for judicial determination and declaration of trustee Robert E. MacDonald's authority. MacDonald is the current trustee of Prudence Trust. (Am. Compl. ¶ 5.) Plaintiff seeks a declaration that MacDonald's failure to market, liquidate, maintain, or improve property held by the Prudence Trust constitutes breach of trust. (*Id.* ¶¶ 76-79.) Plaintiff request that the court issue an order compelling MacDonald and any subsequent trustee to market and sell the property held by the Prudence Trust in order to maintain and improve the Camp in accordance with the terms of the Agreement. (*Id.* ¶ g.)

11

Like Plaintiff's claim for declaratory judgment, Plaintiff's claim for declaration of the trustee's authority is prospective. Plaintiff seeks a declaration of trustee's authority going forward and an order compelling the trustee to take certain actions in the future. Thus, Plaintiff's claim for declaration of the trustee's authority is not based on any action or inaction regarding the Prudence Trust that occurred prior to May 31, 2013, and not barred by the Release. Plaintiff's amended complaint sufficiently sets forth a claim for a declaratory judgment regarding trustee Robert E. MacDonald's authority.

Based on the foregoing, Plaintiff's amended complaint sufficiently sets forth claims for breach of contract, breach of implied contract, interference with a contractual relationship, declaratory judgment, and declaration of the trustee's authority. Therefore, Defendants' motion to dismiss Counts I, II, III, VI, and VII of the amended complaint pursuant to Rule 12(b)(6) for failure to state a claim must be denied.

## III. DEFENDANTS' MOTION TO DISQUALIFY

Defendants have also moved to disqualify Plaintiff's counsel, Colby Wallace, Esq. (Defs. Mot. Dismiss 10.) Defendants assert that, if the court finds that Counts I, II, III, VI, and VII cannot be dismissed because of any perceived ambiguity in the Release, the court will need to consider parol evidence in order to construe the terms of the Release. (*Id.*) Defendants assert that Attorney Wallace was a key negotiator of the Release and that his testimony will be necessary to resolve any ambiguity. (*Id.* at 13-14.) Defendants assert that Maine Rule of Professional Conduct 3.7 prohibits Attorney Wallace from continuing to represent Plaintiff in this action, and therefore, Attorney Wallace must be disqualified. *See* M.R. Prof. Conduct 3.7(a) ("A lawyer shall not act as advocate at a tribunal in which the lawyer is likely to be a necessary witness…").

12

Although the court finds the Defendants' motion to dismiss Counts I, II, III, VI, and VII must be denied, the court's decision is not based on any perceived ambiguity in the Release. As discussed above, the court finds the terms of the Release to be plain and unambiguous. The plain language of the Release unambiguously limits its scope only to claims based on "any action taken or not taken with regard to the [Prudence] Trust *through the date hereof and actions reflected herein,...*" (Defs. Mot. Dismiss, Ex. A) (emphasis supplied). Thus, based on its plain and unambiguous language, the Release discharges only claims based on any action or inaction regarding the Prudence Trust that occurred prior to its effective date, May 31, 2013. The court finds that Counts I, II, III, VI, and VII of the amended complaint sufficiently set forth causes of action not discharged by the Release.

Because the court finds the Release to be unambiguous, the court need not resort to parol evidence in order to construe its terms. *See 2301 Cong. Realty, LLC,* 2014 ME 147, ¶ 10, 106 A.3d 1131. Therefore, the court sees no reason for Attorney Wallace to be called as a witness in this case at this time. Accordingly, Defendants' motion to disqualify Colby Wallace, Esq. is denied.

## IV.    PLAINTIFF'S MOTION FOR SANCTIONS

In his opposition, Plaintiff requests that the court impose Rule 11 sanctions on Defendants. (Pl. Opp'n to Defs. Mot. Dismiss 7-8.) Plaintiff argues that Defendants have mischaracterized the allegations in the amended complaint, misconstrued the Release, and brought their motion to dismiss in bad faith. (*Id.*)

Pursuant to Maine Rule of Civil Procedure 11, every motion must be signed by at least one attorney of record. M.R. Civ. P. 11(a). The signature constitutes a representation that the attorney has read the motion; that to the best of the attorney's knowledge, information, and belief

13

there are good grounds to support the motion; and that it is not interposed for delay. *Id.* If a motion is signed with intent to defeat the purpose of Rule 11, the court may impose appropriate sanctions upon the attorney, the party, or both. *Id.*

There is no basis for the court to conclude that Defendants filed their motion to dismiss in violation of Rule 11. Defendants have not misconstrued the plain language of the Release. Defendants acknowledge that the Release does not discharge claims based on conduct that occurred after its execution on May 31, 2013. (Defs. Reply to Pl. Opp'n to Defs. Mot. Dismiss 6-7.) Further, although Defendants' characterization of the allegations in the amended complaint differs from Plaintiff's characterization, there is no indication that Defendants have acted in bad faith. Therefore, the court declines to impose sanctions.

## V.    CONCLUSION

Based on the foregoing, Defendants Mary Elizabeth Osgood and Michael Franklin Hazen's motion to dismiss Counts I, II, III, VI, and VII of Plaintiff's amended complaint is denied.

Defendants Mary Elizabeth Osgood and Michael Franklin Hazen's motion to disqualify Colby Wallace, Esq. is also denied.

Plaintiff Steven Kelsey Hazen's motion for sanctions is denied.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date:  8/9/14

Lance E. Walker
Justice, Superior Court

14